# Miles *against* Miles.

In an action of ejectment when either party claims by virtue of the Act of Limitations, it is competent for him to give in evidence his own declarations made at the time he went into possession, in order to show that his entry was adverse.

An estoppel can only be asserted or pleaded by one who was affected by the act which constitutes the estoppel.

It is not essential to the efficacy of a parol exchange of land that each party should take immediate possession of the property exchanged.

ERROR to the District Court of *Erie* county.

This was an action of ejectment by the heirs of Thomas Miles, deceased, against William Miles, in which a statement of the case is made by his Honour who delivered the opinion of the court.

*Riddle*, for plaintiff in error.
*Galbreath*, for defendant in error,

The opinion of the Court was delivered by

Huston, J. — The defendants here were plaintiffs below, and brought this ejectment against William P. Finch and others, tenants of William Miles, who was admitted as landlord and defended. He is the uncle of the plaintiffs below. Many witnesses were examined and much testimony given; only a synopsis of which is given. It presented the following facts. About 1798 Thomas Miles settled on a tract of land (not the one in dispute); lived there four years, and had a house and ten or eleven acres in cultivation; a survey; and, in short, a title clear of dispute against all but the Commonwealth; for he was holding as an actual settler under the Act of 1792. William Miles owned several tracts of land, and among others one on Elk creek, near the mouth, for which he had a warrant and survey, and patent from the State in 1799.

In or about 1802 an exchange was agreed on : Thomas to give his tract for the one in question on Elk creek. No writings were drawn, but Thomas gave up the possession of his tract to William, who still holds it, and has laid out the village or town of Wattsburg on it, and sold the lots, or some of them. Thomas moved to a tract belonging to William adjoining the one in question. A man named M'Laughlin lived then on the tract in dispute, and before 1807 had cleared about 40 acres. In 1807 he moved from it, and Thomas Miles went on. M'Laughlin proved that in 1806 he let Thomas Miles work and clear land on it, and gave up to him the whole tract in 1807. Other witnesses say this was in 1808 or '9. It is not stated in our paper-book whether M'Laugh-

[Miles v. Miles.]

lin was in as a tenant of William Miles under an unexpired lease, or held adversely to him. Thomas Miles continued in possession (with the exception of one year) till his death in December 1841 ; and his tenants, as was alleged, till April 1842. He cleared 150 acres ; had a saw-mill ; two houses, one of which was valuable ; two barns; an orchard, &c. But about 1820 Thomas Miles and his wife separated, and she claimed alimony ; and it was proved that to reduce the alimony he said in court that he did not own the property on which he lived. The offices and records were burnt since that time, and the date could not be fixed except by parol. A witness proved that *about* 1820 or 1821 he lived on this land about one year, under a lease from William Miles. Chase was his partner in the lease : he left Chase on the land. That Thomas Miles and his children lived on the land and in the house with him. The plaintiffs below gave some evidence that William Miles was the active person in the dispute between Thomas and his wife; and, as they alleged, suggested this lease. William Miles, as I understand it, alleged that Thomas was to have the tract in question only during his life : and as the family of Thomas had all become of age and left him, and he lived with a tenant, the tenants somehow took and held under William after the death of Thomas.

As there was evidence on both sides, the court left the facts to the jury. There was a bill of exceptions to testimony. M'Laughlin was offered to prove that when Thomas came and entered he claimed it as his own; and he and other witnesses proved that at all times while living and clearing and building, he spoke of it as his own. There was no error in admitting this : it was not offered to prove what he said after transactions were passed. The declarations of a man at the time an act is done have always been received, both in civil and criminal trials. How else could adverse possession be proved ? It has been, and will always be held that possession by one always claiming as his own, is adverse to all others.

In the year 1832 William Miles wished to take out a warrant for the tract of land which he had got from Thomas ; and it being necessary to prove when it was first settled on, and by whom, he took the affidavit of Thomas Miles, who proved the date and extent of his improvement, and it was made for the use of William Miles; and this was alleged to be an estoppel to the present claim by his heirs. To this it was answered, that as William Miles purchased the improvement by giving another farm for it, whether in fee or for the life of Thomas, this was a mode of getting a title to William direct from the State, instead of a warrant to Thomas and a deed from him to William; and that as William paid him by giving another tract, the affidavit was not in the way of recovery in this suit, if the jury believed the exchange was made :

[Miles v. Miles.]

and so the court told the jury; and there is no error in this. That related to a different tract: it might be evidence, but no estoppel in this case. Another point resembling this was Thomas saying, when his wife was claiming alimony, that he did not own the farm on which he lived, but that it belonged to William Miles. The Judge said this was not an estoppel in this case. A declaration to one person, or in one case, is not an estoppel as to another person or in another suit with a different party. Besides, there was some evidence that this allegation was made at the suggestion of the person who now wishes to take advantage of it.

Another point of the defendant below was that a parol exchange was invalid unless each party *immediately* took possession of the part given to him. To this the Judge very properly replied that if William Miles had gotten and held his part, it would not do to let him hold both parts, because he had not or could not immediately give possession to Thomas of the land in question.

The next point in the charge alleged as error is as to the Statute of Limitations; and certainly the opinion of the court was as favourable to the defendant below as he could ask. The Judge assumed that the tenancy under William Miles, about 1820 or 1821, was fair and *bonâ fide;* but it was not positively stated by any one witness whether it was in 1820 or 1821. If in the former the statute might be clearly a bar; if not, it was otherwise. Now there was nothing to justify the court in taking this from the jury; and to them it was finally left.

As to not arresting the judgment, there is nothing in it. The parties, plaintiff below, could recover according to their interest; and if they took possession of more, the court on motion would set this right. There is no execution or proceedings on it before us. Besides, it was asserted by the counsel of the plaintiff below, and not denied by the other side, that before the motion in arrest of judgment was argued, or during the argument, the entry of judgment was made specific for those heirs who were named on the record, and for no others.

Judgment affirmed.