JOHN G. WOOD *versus* DAVID PENNELL *& als.*

Estoppels, *in pais,* operate only between the parties affected by them; and the limitation of their effect applies to partnership cases as well as to others.

Thus, if one holds himself out to be a partner of another, that does not make him, in fact, a partner, nor render him liable as such, except to those who are thereby led to believe he is a partner, and who give credit to the supposed firm upon such belief.

In the trial of such cases, the evidence will not be restricted to the transactions between the parties. The dealings, of the person sought to be held, are admissible to show, not only, that he held himself out as a partner, but that the fact has been one of such general notoriety in the community, that the plaintiff may be presumed to have given the credit on the strength of it.

A single admission to the plaintiff, with proof that he gave the credit upon it, will render the party liable, without any evidence of his general conduct.

A paper irrelevant to the issue is not made admissible for the reason that it was introduced in evidence, at a former trial, by the party now objecting to it.

EXCEPTIONS from the ruling of CUTTING, J., and on motion by defendants to set aside the verdict as being against law and the evidence.

This was an action of ASSUMPSIT on two notes of hand, one dated April 28, 1859, at New York, for $450, — the other dated January 10, 1860, for $500; both payable to the order of plaintiff, on demand with interest, and signed Harmon Pennell & Co.

Harmon Pennell died a few months after the date of the last note. The defendants deny their liability to pay the notes and that they were ever partners of Harmon Pennell.

The evidence introduced by the plaintiff is voluminous, which, it is claimed for him, tends to prove the defendants were actually the partners of said Harmon; if they were not his partners, that they have so conducted themselves respecting their business with him, that they are estopped to deny their liability to pay the notes in suit.

*E. & F. Fox,* for the defendants in support of the exceptions: —

The Court instructed the jury, "if the defendants were not the co-partners of Harmon Pennell, have they so held themselves out as such as to be now estopped from denying it? There is one thing, about which there is no controversy. Harmon Pennell has signed and issued many notes, at various times, signed Harmon Pennell & Co. What was his object in so doing? The acts and declarations of Harmon Pennell, which would tend to prove a co-partnership between himself and these defendants, would bind himself only, unless they were brought to the knowledge of defendants, and they were aware that he was obtaining credit on the strength of such co-partnership, and took no steps to deny its existence. This would amount to a holding themselves out, or allowing themselves to be held out as co-partners and might bind them as such; they might be as much bound as if they suffered their names to be used to deceive the community."

This is the whole charge on this subject, and it fails in one most important particular, which is requisite to render one liable as a partner, by allowing himself to be held out as such by others.

The *creditor* who seeks in this way to hold a person liable, *must be shown to have had knowledge of such holding out, and must have given credit* to such party, and the jury must so find, before they can charge the party; and without this, a plaintiff cannot recover.

Some of the older decisions countenanced a different doctrine, and held that it made no difference in such a person's liability, that the party seeking to charge him, did not know at the time, when he gave credit to the firm, that he had so held himself. Such is not now the law, and for good reason; the party is chargeable, not because he is a partner *de facto*, sharing the profits and deriving a benefit from the business, but because, by his action, he has induced the creditor to give credit to the firm, and he is therefore to be held accountable. *Vide* Smith's Leading Cases, vol. 1, p. 981, and cases there cited; *Pote* v. *Eyton*, 3 M. G. & Scott, (38 E. C. L., 54).

The same doctrine has been established by various Courts in this country.

In *Bendict* v. *Daveis*, 2 McLean, 347, if a person holds himself out as a partner in a concern, he is liable as such, though he may have no interest, *but it must appear that the creditor had knowledge of such holding out, at the time he gave credit to the firm.* Extracted from 5 U. S. Digest, 483.

Greenleaf, in enumerating the cases in which a liability as partner to third persons exists, divides them into five classes, and in vol. 2, § 484, 11 Ed., states the law in this respect as follows :—"4thly, where the parties are not in reality partners, but hold themselves out, or at least *are held out, by the party sought to be charged, as partners, to third persons, who give credit to them accordingly."*—Citing Story on Partnership, § 84, which is in same language.

And in vol. 1, § 207, p. 291, he says :—"so, also, where one knowingly permits his name to be used, as one of the parties in a trading firm, under such circumstances of publicity, *as to satisfy a jury that a stranger knew it and believed him to be a partner, he is liable to such stranger, in all transactions in which the latter engaged and gave credit upon the faith of his being such partner.*

3d Kent, 28, (10 Ed.,) it is said, (note,) in a suit against partners, the jury are not called upon to decide whether a partnership actually existed, but only whether *it was held out to the plaintiffs* as existing.

On trial of *Fitch* v. *Harrington & al.*, reported 13 Gray, 469, before METCALF, J., among other instructions requested by the plaintiff, was the following :—"that Harrington's acts and declarations, if made publicly, though not brought to the knowledge of the plaintiffs, were competent evidence, that he held himself out as a partner, and thereby induced the plaintiffs to give credit to the firm, under the belief that he was a partner. The Court declined to give this instruction but ruled :—" If Harrington was not a member of the firm, yet if, by his acts and declarations, *which were brought*

*home to the knowledge of the plaintiffs*, he led them to believe that he was a member of the firm, and to give credit to the firm in that belief, he was liable to them in this action; that his acts and declarations to persons other than the plaintiffs, were evidence for the jury to consider, in determining the question, whether he was a member of the firm, but if such acts and declarations did not satisfy the jury, that he was a member of the firm, then *they were not evidence which would render him liable to the plaintiffs, unless knowledge of them was brought home to the plaintiffs and induced them to give credit to the firm in the belief that he was a member of the firm.*"

The verdict, for another instruction which was incorrect, was set aside, but the Court say, "the other instructions given to the jury, seem to us to have been *unexceptionable.*"

These instructions the Court is invited to examine, as they so clearly and imperatively point out, what is requisite to charge one, as a partner, who is not really a partner, on account of his actions, or holding himself out to others as a partner—they demonstrate, that it is no matter what one does or says of this nature, unless the party dealing with the firm has knowledge of his proceedings, and gives credit thereby to *him* as one of the firm—"they must be brought home to the plaintiff to render a party liable to him," and "the plaintiff must be thereby induced to give credit to the firm, in the belief he was a member of the firm."

Plaintiff having on former trial offered the inventory of Harmon Pennell's estate, we were at liberty to use it on present trial; by his actions and use of it as evidence, he gave it credit as correct and true. It is equivalent to an act or statement of plaintiff, which is evidence against him, and is in the nature of an admission, that its contents are true and have some bearing on the issue.

*Shepley & Dana, contra.*

Whether there was, or not, an actual partnership, was left to the jury under instructions to which no exceptions

were taken : so of the other question as to the considera-
tion of the notes in suit.

These were matters exclusively within the province of the
jury, and their finding is conclusive.

A part only of the instructions as to what would amount
to such a holding out of the co-partnership as would make
defendants liable is set out in the exceptions ; but what ap-
pears, taken in connection with the testimony, is sufficiently
favorable to them and could not have misled the jury.
Some sentences in the charge relate incidentally to the ques-
tion of actual co-partnership — but in regard to "holding
themselves out" or "allowing themselves to be held out as
co-partners," the jury were instructed that "the acts and
declarations of Harmon which would tend to prove a co-
partnership, would bind himself only, unless they were
brought to the knowledge of defendants, and they were
aware that he was obtaining credit on the strength of such
co-partnership and took no steps to deny its existence."
"This *might* bind them as co-partners."

Why, and under what circumstances defendants might be
bound by the acts of Harmon so far as to make them liable
here, were fully stated to the jury, who knew that plaintiff
claimed to hold them on the credit he gave in the belief of
their truth.

There is no error in the instruction that the acts and dec-
larations of defendants, which were relied on by plaintiff as
tending to prove an actual co-partnership, might, if proved
to satisfaction of the jury, tend to show that there was a
holding out of the co-partnership, if none existed in fact.

The last paragraph in the instructions relates entirely to
testimony introduced by defendants, to show that witness,
who spoke of having had knowledge of the firm name of
Harmon Pennell & Co., had written letters and made out
bills to Harmon Pennell individually ; whence it was agreed
for defendants that these persons had, in fact, not dealt
with the firm or given credit to it.

The language of the presiding Judge simply amounts to

this, that a demand charged to one of several co-partners may really exist against the firm, and a payment of it by one would protect all.

The instruction is entirely correct and would not have been adverted to but that, without reference to the testimony, it might seem obscure.

Why, and under what circumstances, persons not actually partners are held as such, as between them and third persons, is stated in Story's Partnership, §§ 64–5. After quoting, with concurrence, the language of Chief Justice EYRE, in *Waugh* v. *Carver*, 2 H. Blackstone, 235, the author adds,—"Upon so clear and natural a doctrine, it seems unnecessary to cite at large the authorities in its support. They are uniform and positive to the purpose. This last class of cases may arise from the express acknowledgments of the parties, or by implication or presumption from circumstances. Thus, if a person should expressly hold himself out as a partner, and thereby should induce the public at large, or particular persons, to give credit to the partnership, he would be liable as a partner for the debts so contracted, although he should in reality not be a partner."

The decided cases on this subject are numerous, the current of authority sets entirely in favor of those who have dealt with others, in the belief that their acts, declarations and admissions are true. It is not deemed necessary to refer the Court to many of these cases.

In *Goode* v. *Harrison*, 5 B. & Ald., 147, ABBOTT, C. J., says, "a person may be sued as a partner who never was in reality a partner. If once a person holds himself out as being a partner, till he gives notice that he has ceased to be so, those who deal with the firm upon the faith of the supposed partnership may consider him as such, and he is bound by that representation. It is not necessary, in fact or in law, that, to create a legal obligation, a partnership should be still continuing. The legal obligation may arise from the acts of the party at one time and his forbearance at another time."

In *Chase* v. *Deming*, 42 N. H., 274, BELL, C. J., says, "declarations, statements and admissions, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct has been thus influenced, and who would suffer any injury by their denial. In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations. 1 Greenl. Ev., 240, § 207 ; 2 Smith's Leading Cases, 642 ; *Simons* v. *Steele*, 36 N. H., 73.; same case, 22 Law Reporter, 609.

And our own Court has held, that, "to show that persons carry on business as partners, or as jointly associated, it is sufficient to prove that they have admitted the fact or have held themselves out as such." *Boyer* v. *Weston*, 16 Maine, 261 ; *Casco Bank* v. *Hills*, 16 Maine, 155.

One of the latest cases, where a party admitted himself a member of a firm, is *Finn* v. *Tompson*, 4 E. D. Smith, 276.

It may be argued that the relation between these defendants, as testified by them, shows that there was no partnership. But, whatever their arrangements *inter se* may have been, is of no consequence to third parties. *Bond* v. *Pittard*, 3 Mees. & W., 357.

Undoubtedly, the arrangement between the defendants was similar to that of defendants in *Doak* v. *Swann & al.*, 8 Maine, 170 ; *Barrett* v. *same*, 17 Maine, 180. See, also, *Farr* v. *Wheeler*, 20 N. H., 569.

But whatever this arrangement was is of no consequence in this case, and is only alluded to as one of the reasons *why* defendants, at the time, admitted a partnership.

But whatever the reasons of the admission of co-partnership, whether made for cause or without cause, is not of the slightest consequence. The admission was made, the plaintiff acted on the faith of it, and it is now too late to talk of anything but these two facts.

The opinion of the Court was drawn up by

Davis, J. — This case comes before us on exceptions, and a motion for a new trial, on the ground that the verdict is against the evidence.

The suit was upon certain promissory notes, payable to the plaintiff, and signed "Harmon Pennell & Co." They were given by Harmon Pennell, who died in May, 1860; and the plaintiff claims that the defendants were his partners; or, that they had so held themselves out as partners, in the community where they were engaged in business with him, as to be estopped from denying it.

The defendants were engaged in shipbuilding with Harmon Pennell, who took the principal charge of the business, making purchases, and giving notes, in the name of Harmon Pennell & Co. The Court instructed the jury that "the acts and declarations of Harmon Pennell, which would tend to prove a partnership between himself and these defendants, would bind himself only, unless they were brought to the knowledge of the defendants, and they were aware that he was obtaining credit on the strength of such co-partnership, and took no steps to deny its existence. This would amount to holding themselves out, or allowing themselves to be held out, as co-partners, and might bind them as such. They might be as much bound as if they suffered their names to be used to deceive the community."

These instructions must be interpreted in connection with the evidence. If a person should be aware that another was obtaining credit by representing him to be a partner, he would not necessarily be under obligation to take any steps to deny it. And, if he should neither do or say anything to give countenance to such representations, or to lead any one to believe them to be true, he would not be liable. If inquired of, or if the representations should be made in his presence, it would be his duty to deny their truth; otherwise not. But so far as any acts and representations of Harmon Pennell are proved in this case, they were so far within the personal knowledge of the defendants, and so

connected with the business in which they were engaged, that, if persons were dealing with them under the belief that they were partners, they must have known it, and should have undeceived them.

The counsel for the defendants does not complain of the instructions in this respect. But he contends that another important element was omitted by the Court, for the reason that, if the defendants did hold themselves out as partners of Harmon Pennell, they did not thereby render themselves liable *to the plaintiff*, unless *he knew* the fact, *and gave the credit in consequence of it*.

It is a general principle applicable to all estoppels *in pais*, that they operate only between the parties affected by them. The acts or statements of the party making them must be *known* to the other party; and the latter must thereby be induced to change his position. *Copeland* v. *Copeland*, 28 Maine, 525; *Morton* v. *Hodgdon*, 32 Maine, 127. For an estoppel can be asserted or pleaded only by one who has been affected by the act. *Miles* v. *Miles*, 8 Watts & Serg., 135; *Hicks* v. *Cram*, 17 Vt., 449; *Rangely* v. *Spring*, 21 Maine, 130. "In all cases where one party has been induced to take a particular course on the faith of statements made, or expectations held out, either expressly or by implication, by another, the latter will be debarred from pursuing any subsequent mode of action at variance with his former language and conduct, to the injury of the former." 2 Hare & Wallace's Leading Cases, 165.

Thus, though one has admitted his signature upon a promissory note to be genuine, he is not thereby estopped from denying it, unless the other party was induced to take the note, or was in some other way affected by the admission. *Hall* v. *Huse*, 10 Mass., 39, note.

This limitation of the effect of estoppels *in pais* applies to partnership cases, as well as to others. If one holds himself out to be a partner of another, that does not make him in fact a partner, nor render him liable as such, except to those who are thereby led to believe he is a partner, and

who give credit to the supposed firm upon such belief. The cases cited by the plaintiff clearly recognize this distinction.

In *Goode* v. *Harrison*, 5 B. & A., 147, it is said, — "if a person holds himself out as being a partner, till he gives notice that he has ceased to be so, *those who deal with the firm upon the faith of the supposed partnership* may consider him as such, and he is bound by that representation."

And, in *Chase* v. *Deming*, 42 N. H., 274, the rule is thus carefully stated :— "declarations, statements, and admissions, *which have been acted upon by others*, are conclusive against the party making them, *in all cases between him and the person whose conduct has been thus influenced*, and who would suffer any injury by their denial."

The instructions in the case at bar contain no such limitation. They assert a general liability against one who holds himself out as a partner.

It is true, that, in the trial of such cases, the evidence is not restricted to the transactions between the parties. The *general* conduct of the person sought to be held as a partner is proved. His dealings with others in the community are admitted in evidence in order to show, not only that he has held himself out as a partner, but that the fact has been one of such general notoriety in the community that the plaintiff may be presumed to have given the credit on the strength of it. A single admission to the plaintiff, with proof that he was thereby induced to give the credit, would have the same effect, and render any evidence of general conduct entirely unnecessary.

It is true, as the counsel for the plaintiff suggests, that the exceptions do not purport to contain all the instructions on the question of co-partnership; and, if those reported were not erroneous, we might presume that all other necessary instructions were given. But there can never be a *general liability* as a partner *by estoppel*. Therefore the assertion of the doctrine, without limiting it to the persons who were induced by the acts or admissions to give credit to the supposed firm, was essentially erroneous. It was not

correct as far as it went, only needing some other instructions, which may have been given, to state the whole truth. It was stating that to be true generally, which could not be true at all, except in some particular cases, which should have been specified. The whole question of the liability of the defendants turned upon the point of *the credit having been given by the plaintiff in consequence* of their acts or admissions; while the case as reported shows that the jury may not have regarded this point at all.

The inventory of Harmon Pennell's estate was properly excluded. It was irrelevant to the question at issue; and the plaintiff was not estopped from questioning its relevancy by having himself introduced it in evidence at a former trial. *Miller* v. *Baker*, 1 Met., 27.

*Exceptions sustained.—New trial granted.*

APPLETON, C. J., KENT, WALTON and DICKERSON, JJ., concurred.