## PIERRE A. BERTHOLD, ALFRED C. BERNONDY, AND MARKLAT THOMPSON, PLAINTIFFS IN ERROR, *v.* EDWARD GOLDSMITH.

To enlarge his business, Goldsmith, the original plaintiff, authorized a third person to go to St. Louis to negotiate an arrangement with some commission house there to accept consignments of cigars from him and to sell the same on his account, agreeing with the person so authorized to give him half the profits, with a guaranty that his compensation should amount to eighteen hundred dollars *per annum.* He made the arrangement with the defendants, stipulating as to their commissions and that the cigars should be shipped at Baltimore, in bond, subject to duties and charges, and notified the plaintiff of the terms and conditions; whereupon the plaintiff wrote the defendants a letter, concluding with these words: "All shipped to your house. I will hold you responsible;" and sent two invoices of cigars, which were duly received. Afterwards, the person who negotiated the arrangement wrote an order to the defendants to deliver all the cigars, not sold, to another firm, receiving whatever sums they had advanced. That firm paid the advances, received the cigars and sold them, but no portion of the proceeds ever came to the hands of the plaintiff. The defence was, that the person who gave the order was either a partner or an agent of the plaintiff, and in either capacity had a right to direct a transfer of the cigars, and thus exonerate the defendants from all liability.

Held:

1. Actual participation in the profits, as principals in general, creates a partnership as between the participant and third persons, whatever may have been the real relation of the former to the firm, but the rule has no application to a case of mere service or special agency, where the employee has no power in the firm and no such interest in the profits as will enable him to go into a court of equity to enforce a lien for the same or to compel an account. Unless such employee is in some way interested in the profits of the business, as principal, he cannot be regarded as falling within the general rule, because, when not so interested, his condition is not different from that of an ordinary creditor. Cases may arise, on one side and the other of the line, where the difference between them is so slight that it may appear to be unsubstantial; yet the distinction itself is well founded in reason, and the only difficulty is in the application of the principle on which it rests. No such difficulty, however, occurs in this case, for the defendants were a party to the arrangement and knew the relation which the person who negotiated it sustained to them and to the plaintiff, and they also knew that the goods had been sent by the plaintiff and received by them on the terms and conditions specified in the plaintiff's letter. He was not, therefore, a partner in fact, or as between the plaintiff and defendants.

2. He was not an agent of the plaintiff, authorized to withdraw the consignments, or to exonerate the defendants from their obligation to account for the sales.

On the contrary, the arrangement was that the cigars should remain in their custody and control, and that they should stand responsible for the proceeds, and the case shows that it was never changed. The court below were right in instructing the jury that there was no evidence to sustain the second ground of defence.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Missouri.

The facts are stated in the opinion of the court.

It was argued by *Mr. Blair* for the plaintiffs in error, and by *Mr. Carlisle*, upon a brief filed by *Mr. Badger* and himself, for the defendant.

The reader can see from the head note and opinion that the arguments were closely connected with the facts of the case, without relating to any general principle of law.

Mr. Justice CLIFFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Missouri. The declaration in this case was filed on the second day of September, 1858, by the present defendant, who was the plaintiff in the court below. It was an action of assumpsit, and the declaration contained five counts. Without attempting to give any very precise analysis of the declaration, it will be sufficient to say, that the plaintiff alleged, that on the twenty-ninth day of August, 1857, at the special instance and request of the defendants, he sent and consigned to them sundry cases and boxes of cigars of great value, in order that they might sell and dispose of the same for him, on their guaranty of sales, for a certain commission or reward, and that the defendants, in consideration thereof, undertook, and then and there promised to sell and dispose of the cigars on his account, and to be answerable to him for the due payment of the sums for which the same should be sold, and pay over the proceeds to him. And the complaint is, that they not only neglected and refused to perform their promises in that behalf, but that they disposed of the consignment to their own use. Defendants appeared and

demurred to the declaration, but the court overruled the demurrer, and the parties subsequently went to trial upon the general issue. Testimony was introduced on both sides, and after the arguments were closed, the defendants presented to the court certain prayers for instruction, which were refused. And under the instructions given by the court, the jury returned their verdict in favor of the plaintiff for the sum of three thousand dollars. Exceptions were duly taken by the defendants, not only to the refusal of the court to instruct the jury as requested, but also to the instructions given, and the question to be decided is, whether, upon the facts disclosed in the record, there was any error in the action of the court. It appears from the evidence that the plaintiff was a merchant, residing at Baltimore, in the State of Maryland, and that the defendants were commission merchants, doing business at St. Louis, in the State of Missouri. For the purposes of this investigation, it is conceded that the cigars were sent by the plaintiff, and that they were duly received by the defendants, and there is no dispute as to the quantity or their value. Some of the cigars were forwarded by railroad, but the largest invoice was shipped, in bond, with the understanding that the defendants would make the necessary advances for the duties and other charges. Accordingly they received the cases and boxes containing the cigars at the custom-house, and paid the duties and freight. All of the cigars were sent and received under the terms and conditions specified in a certain letter from the plaintiff to the defendants, to which more particular reference will presently be made. Prior to the date of that letter, it had been agreed between the plaintiff and one H. F. Hook, that the latter should go to St. Louis, and if practicable, make an arrangement there with some responsible commission house to accept consignments of cigars from the plaintiff, and sell and dispose of them on his account. It seems that Hook wanted employment, and the plaintiff wanted to extend his business. They accordingly agreed to make an effort of that kind, and if successful, that Hook should have half the profits, with a guaranty from the plaintiff that his compensation should amount to eighteen hundred dollars. Pursuant to that under-

*Berthold et al.* v. *Goldsmith.*

standing Hook went to St. Louis and made an arrangement with the defendants, and communicated the terms and conditions of it to the plaintiff. By the terms of this arrangement the defendants were to sell for a commission of two and a half per cent., and were to guaranty the sales for a like commission. They were to receive the goods in bond, at the custom-house, make the necessary advances for duties and charges, and accept drafts drawn by the plaintiff against the consignments. Having learned the nature of the proffered terms, the plaintiff, on the twenty eighth day of August, 1857, wrote to the defendants the letter to which reference has already been made. Referring in express terms to that arrangement, he informed the defendants by that letter that he had consigned to them an invoice of cigars, and requested them to render to him, when the cigars were sold, an account of the sales; and what is more, he therein stated to the defendants that if they were willing to make advances on such goods, he would consign to them, in a short time, additional invoices to a large amount; and in conclusion, employed the following language: " All shipped to your house by me; I will hold you responsible." Full proof is exhibited in the record, that all the cigars in controversy were sent and received under the arrangement referred to in that letter, and the person who made the arrangement with the defendants testified that it was never changed. He remained in St. Louis to negotiate sales, and he also testified that he managed the whole business and conducted the correspondence with the plaintiff. Defendants dissolved their partnership on the first day of January, 1858, so that it became desirable for them to get rid of their consignments; and on the fifteenth day of the same month, all of the cigars not previously sold were turned over to another firm, pursuant to an order drawn on them by the person who negotiated the arrangement. That step was taken without consulting the plaintiff, and without his knowledge, and ten days later the defendants wrote to the plaintiff and declined to render an account of sales, affirming that they had made none, and assuming, in effect, that the person who negotiated the arrangement was the general agent of the plaintiff with respect to the cigars;

and they informed the plaintiff in the same letter, that he, the supposed agent, on withdrawing the consignment, had paid back to them what money they had advanced on the same. Much other testimony was introduced on the one side or the other, but the statement already given exhibits the material facts necessary to be considered in this stage of the investigation.

Two theories were assumed by the defendants at the trial, and the prayers for instruction were all based upon the one or the other of those theories. It was insisted, in the first place, that the person who negotiated the arrangement and finally withdrew the consignment was a partner with the plaintiff in the whole transaction; and if not, then, secondly, that he was the agent of the plaintiff, and, as such, had authority to withdraw the consignment and acquit the defendants from all further responsibility. But the presiding justices instructed the jury, in substance and effect, that the defendants were responsible for the cigars consigned under the letter of instructions, whether sold directly by themselves as factors of the plaintiff, or by Hook, as authorized to negotiate sales, provided the cigars were received into their possession; that the defendants were authorized by the letter to sell the cigars in the usual course of business, and if they found that Hook was also authorized to negotiate sales, then the sales by him in the usual way were also valid, and that the defendants, by the letter, were to make the advances, have two and a half per cent. commissions on sales, and two and a half per cent. on guaranty of sales, and were to account to the plaintiff. Among other things, they also instructed the jury, that there was no evidence to show any authority from the plaintiff to turn the cigars over to an auctioneer to be sold, and that the plaintiff, therefore, was entitled to recover the net proceeds of the cigars sold, either by the defendant or Hook, if the latter was authorized to negotiate sales, and the market value at St. Louis of the residue, less the charges paid for freight, storage, insurance, drayage, and duties. Both of the defences set up in the court below are still insisted upon in this court, but we think neither of them can be sustained, and that the instructions given to the jury were correct.

1. Partnership is usually defined to be a voluntary contract between two or more competent persons, to place their money, effects, labor, and skill, or some one or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. But partnership and community of interest, independently considered, are not always the same thing; for the first, as between the partners themselves, is founded upon the copartnership agreement which prescribes the relation they bear to each other, and of itself creates the community of interest; but the last may exist, notwithstanding there has been no agreement between the parties. Part owners of a ship, for example, are uniformly treated as tenants in common, and not as partners, although it cannot be denied that there is a community of interest between them in every part of the vessel, and each is entitled to a share of her earnings in proportion to his undivided interest, and must also share the loss. Joint owners of merchandise may consign it for sale abroad to the same consignee; and if each gives separate instructions for his own share, it is well-settled law that these interests are several, and that they are not to be treated as partners in the adventure. Numerous illustrations of the principle are to be found in the decisions of the courts, of which we will give but one more at the present time. Where a broker or other agent purchases goods for several persons, each agreeing to take a certain portion of the entire parcel, it is clear, if there is no arrangement that the goods shall be sold on joint account, that the transaction does not amount to a partnership, although there is undeniably a community of interest in the goods so purchased. These examples will be sufficient to show that while every partnership is founded on a community of interest, it is, nevertheless, incorrect to suppose that every community of interest necessarily constitutes the relation of partnership within the meaning of the commercial law. Whenever it appears that there is a community of interest in the capital stock, and also a community of interest in the profit and loss, then it is clear that the case is one of actual partnership between the parties themselves, and of course it is

so as to third persons. · All of the decided cases, however, agree that it is seldom or never essential that both of these ingredients should concur in the case in order to establish that relation. Cases occur, undoubtedly, where a community of interest in the property, without any regard to the profits, will almost necessarily lead to the conclusion that the relation between the parties was that of partnership; and, under some circumstances, that conclusion will follow, although the sale of the property for the joint interest may not be contemplated by the parties. On the other hand, it is equally clear that there may be such a community of interest in the profits without regard to loss, and without any community of interest whatever in the property as will establish that relation. Participation in the profits, however, will not alone create a partnership between the parties themselves as to the property, contrary to their intention. But merchants and traders are often justly held to be partners as to third persons, where they are not to be deemed such, expressly or impliedly, as between themselves. Judge Story distributes the cases in which such a liability exists as to third persons into five classes, and it is obvious that the present case does not fall within any principle of that classification. Story on Part., section 542; Greenl. Ev., section 482. He admits, however, that the pressure of the general doctrine is most severely felt in that class of cases where all the parties charged, as partners, are to share the profits between them. but the losses are to be borne exclusively by one of their number. Actual participation in the profits as principal, we think, creates a partnership as between the parties and third persons, whatever may be their intentions in that behalf, and notwithstanding the dormant partner was not expected to participate in the loss beyond the amount of the profits. Every man who has a share of the profits of a trade or business ought also to bear his share of the loss, for the reason, that in taking a part of the profits, he takes a part of the fund of the trade on which the creditor relies for payment. Grace *v.* Smith, 2 W. Black., 998; Waugh *v.* Carver, 2 H. Black., 235. Actual partnership, as between a creditor and the dormant partner, is considered by the law to subsist

where there has been a participation in the profits, although the participant may have expressly stipulated with his associates against all the usual incidents to that relation. Pond *v.* Pittard, 3 Mee. and Wels., 357. That rule, however, has no application whatever to a case of service or special agency, where the employee has no power as a partner in the firm and no interest in the profits, as property, but is simply employed as a servant or special agent, and is to receive a given sum out of the profits, or a proportion of the same, as a compensation for his services.

Merchants are obliged to have clerks, and oftentimes find it necessary to employ brokers or special agents to effect sales, and it is no more detrimental to their creditors that such employees should be paid out of the profits of their trade than from any other source of income within their disposal. Unless the supposed dormant partner is in some way interested in the profits of the business, as principal, it is plain that he cannot bring suit as a partner, and go into equity and compel an account; nor can it be held that he has any such lien on the profits as a court of equity may enforce; and if not, then his condition is the same as that of an ordinary creditor, and he must pursue his remedy against his employer. Denny et al. *v.* Cabot et al., 6 Met., 90; Vanderburg *v.* Hull, 20 Wen., 70. Repeated decisions have recognised this distinction, and although it may happen, as heretofore, that cases will arise on the one side or the other of the line, approaching in their facts so near to each other that the difference between them may appear to be unsubstantial, yet the distinction itself, we think, is well founded in reason, and that the only difficulty is in the application of the principle on which it rests. Hallet *v.* Desban, 14 Lou. An., 529.

No such difficulty, however, arises in this case. Defendants knew the exact relation which Hook sustained to them, and to the plaintiff, and they had the letter of the plaintiff in their possession, informing them that he should hold them responsible for the cigars. They knew what the arrangement was, and that the goods had been sent by the plaintiff and received by them, on the terms and conditions specified in that letter.

Irrespective of the guaranty, it is difficult to see how Hook could have any interest in the profits as a partner with the plaintiff. He had no interest in the property, and by the arrangement which he himself negotiated, the cigars were to remain for sale in the custody and control of the defendants, as commission merchants, and they stood responsible to the plaintiff for the proceeds. But he did not rely upon the profits for his compensation, for unless one-half the profits exceeded eighteen hundred dollars a year, he would neither be benefited nor injured by the success or failure of the adventure, except so far as the latter result might have a tendency to induce his employer to dispense with his services. Little or nothing was ever realized from the enterprise, and of course no excess of profits over the amount of the guaranty was ever earned. It is quite obvious, therefore, that the theory of the defendants on this branch of the case cannot be sustained.

2. It is insisted by the defendants that Hook was the agent of the plaintiff, and as such that he had authority to withdraw the cigars from their custody and control, and turn them over to the other firm. On that point, the presiding justice instructed the jury that there was no evidence in the case to support that theory, and, after a careful examination of the evidence exhibited in the transcript, we entirely concur in that view of the case; and the judgment of the Circuit Court is therefore affirmed, with costs.