Day, J.
The original action was brought by Harvey against Childs and Potter, to recover $158.40, for seventeen hogs sold by Harvey to Potter.
Potter is in default. Childs denies his liability. His liability is claimed solely on the ground that he was a partner of Potter in the adventure for which the hogs were purchased.
The partnership claimed rests on the following state of facts: Potter went to Childs, and told him that he had *320 contracted for about two car loads of hogs, to be delivered at Loudonville the next day, and had not the money to pay for them. He asked Childs to advance the money and take an interest in the hogs. Childs refused. Thereupon, Potter proposed that if he would let him have the money to enable him to pay for the hogs he had bought, and others he might have to buy to make the two car loads, he (Childs) should take possession of the hogs when carred at Loudonville, as security for the money, take them to Pittsburg, sell them, and take his pay from the proceeds of the sale; that he might have one-half the net profits of the adventure, and that in no event should Childs sustain any loss, but the money advanced by him should be fully paid by Potter in case the amount realized from the sale of the hogs was insufficient. Childs accepted the proposition, and, it being agreed that $2,500 would be enough to pay for the two car loads, he advanced that sum to Potter. Afterward, without the knowledge of Childs, Potter bought the hogs in question of Harvey, on his own credit, and they made part of the two car loads of hogs which were taken possession of by Childs, sold in Pittsburg, and the avails of the sale were appropriated in payment of the money advanced by him. No profits were made. The avails of the sale were insufficient to pay the amount advanced by Childs, and Potter paid him the deficiency, and for his time and expenses in the transaction.
The question to be considered, then, is, are the defendants, by construction of law, to be regarded partners as to the plaintiff, being a third person, in the debt incurred to him by Potter in his own name ?
What shall be regarded, as to third persons, a test of partnership between parties who do not consider themselves to be partners, and who have done nothing to estop them from denying that they are such, has been much discussed by courts and elementary writers, and the problem seems to be one of difficult solution. It is needless to review here the numerous cases on the subject; a statement of results is sufficient.
*321 No. little difficulty has been experienced in determining the meaning and limits of phrases that have been recognized as tests of a partnership in such cases, and in their application to the varying cases that arise.
The effort has been to draw a distinct line between cases where one has a community of interest in the profits of a business, as distinguished from' those where one is entitled to receive a sum of money out of the profits as a creditor, or a sum proportioned to a quantum of profits, or a share of the profits as a compensation for services or labor.
Although a partnership may be said to rest upon the idea of a communion of profits, nevertheless the foundation of the liability of one partner for the acts of another, is the relation they sustain to each other, as being each principal and agent. That relation,- it would seem, then, constitutes the true test of a partnership liability, and rests upon the just foundation that the joint liability was incurred on the express or implied authority of the party sought to be charged.
But if the relation of principal and agent be regarded as the test of a partnership and consequent joint liability, the question still remains, what shall be deemed sufficient evidence of that relation, orto raise the implication of authority to incur the liability in question ?
To this end numerous tests have been supposed to exist; but the best considered and least objectionable is that of a community of interest in the profits of a business or transaction as a principal or proprietor. Par. on Part. 71 and note; Coll, on Part., secs. 25, 44. See also Story on Part., secs. 36, 38, 60; Berthold v. Goldsmith, 24 How. 536.
But this test is valuable as a rule chiefly because it evinces a relation between the parties, where each may reasonably be presumed to act for himself and as agent for the others, and to that.extent establishes the fact that the liability was incurred on the authority of all so participating in the profits. Participation in the profits of a business, however, can not be regarded as a rule so uni *322 versal and unrelenting as to be unjustly applied to a case where a debt is incurred by one who can not be said to be acting, in the particular transaction, as the agent or on behalf of the party sought to be charged. Therefore, on principle, the true test of a partnership, at last, is left to be that of the relation of the parties as principal and agent, to be proved by any competent evidence; for when they sustained that relation, a joint liability may be said to have been incurred by the authority, or on behalf of each of the parties so related. The tendency of the more modern authorities, both English and American, is to this conclusion.
The case of Cox v. Hickman, decided by the House of Lords in 1860, has become a leading case on the subject. 99 E. C. L. 47; 8 House of Lords Cases, 268. It is summarized in the subsequent case of Bullen v. Sharp, 1 Law Reporter, 112, by Blackburn, J., as follows: “ I think that the ratio decidendi is that the proposition laid down in Waugh v. Corner, viz., that a participation in the profits of a business does of itself, by operation of law, constitute a partnership, is not a correct statement of the law of England; but that the true question is, as stated by Lord Cranworth, whether the trade is carried on on behalf of the person sought to be charged as a partner, the participation in the profits being a most important element in determining the question, but not being in itself decisive; the test being, in the language of Lord Wensleydale, whether it is such a participation in the profits as to constitute the relation of principal and agent between the person taking the profits and those actually carrying on the business.” Add. on Cont. 163.
These cases were decided before the passage of the act of parliament in relation to partnerships. But, so far as relates to this question, in a subsequent case, Bramwell, J., declared, in effect, that the act was only declaratory of the common law, as held in Cox v. Hickman. Holme v. Hammond, 7 Law, 218-236.
The question was much considered in Eastman v. Clark, 53 N. H. 276, where the authorities are fully collated and *323 ably reviewed. The case was decided in 1872. The conclusion arrived at is stated by Smith, J., as follows: “ The real ultimate question in all cases like the present is one of agency. Did the person sought to be charged, stand in the relation of principal to the person contracting the debt? Participation in the profits is not decisive of the question, ‘ except so far as it is evidence of the relation of principal and agent between the persons taking the profits and those actually carrying on the business.’ Whether such relation actually existed is a question of fact. Upon the trial of that question, proof of a right to participate in the profits would be a cogent and often practically conclusive piece of evidence to establish the existence of that relation; but there is no sound foundation for an arbitrary rule of law requiring courts or jurors to regard participation in the profits as a decisive test which will in all instances necessitate the conclusion that the participator is liable for the debts.”
In the absence of any known stipulation to the contrary, every party of a trading firm, within the scope of the joint business, in contemplation of law, is clothed with implied authority to enter into simple contracts on behalf of the firm in furtherance of the business of the partnership, and thereby bind each member of the firm. Where, therefore, as in the case of Wood v. Vallette, 7 Ohio St. 172, and the later case of Leggett v. Hyde, 58 N. Y. 272, money is advanced, to be used in a trading business, and returned in a year with a share of the profits made during that time, it may well be implied that the business was conducted on behalf and by the authority of the person advancing the money and sharing the profits, for it is to the continuing trade, in the ordinary way,'that he looks for his profits.
But such cases are plainly distinguishable from one where money is advanced, to be embarked in a single transaction, where no credit is contemplated. In such case there is no ground for the implied authority to incur debts, such as exists in regard to a general trading business. Add. on Cont. 161.
*324 In the case before us it is obvious that it was not contemplated in the ammgement between Childs and Potter that any indebtedness should be incurred in the purchase of hogs for the contemplated adventure, to which the whole business was to be confined. There is, then, no ground for the implication of authority from Childs to incur the debt in question. On the contrary, such implication is rebutted by the advancement of money to pay for all the hogs that were to come to his hands.
Moreover, Childs had no legal interest in any of the hogs until they were delivered to him at the cars, nor had he any equitable interest in hogs, before such delivery, that were bought by Potter and not paid for by money received from Childs. He had, then, no interest whatever in the hogs bought of Harvey on credit, when the debt to him was incurred ; and Potter, before delivery to Childs, might have sold them without being liable to account to Childs. The fact is apparent that it was the understanding of the parties that Potter had bought for himself, and, if need be, was in like manner to buy enough more hogs to make two carloads ; and it can not be doubted that, until their delivery, at least, all the hogs belonged to Potter alone, and at most were only regarded as his contribution to the enterprise. If so regarded, the case is like that of Wilson v. Whitehead, 10 M. & W. 502, where it was agreed between three parties that one should edit, another print, and the other publish a paper, and share equally in the net profits. The printer was to furnish the paper and charge the firm at cost prices. It was held that the printer alone was liable to the person of whom he bought the paper. Parke, B., said: “The question is, did the other defendants authorize Whitehead to purchase the paper on their account or on his own ? It appears to me, on the true construction of the contract, that the latter was the case. When the paper was in his possession he was at liberty to have appropriated it to any other purpose.”
But the truth is, Potter was the owner of the hogs until they were sold by Childs} for Childs declined to take any *325 interest in tlie hogs other than as security for the money advanced by him to Potter. Looking to the whole matter, it is clear that the transaction was a loan of money by one party to the other, on the security afforded by the possession of the hogs. Childs, therefore, was the mere pledgee of the hogs, with a power of sale by agreement of the parties, and, as such, had only a special property in the hogs. The general property in the hogs, from first to last, remained in Potter. He was the owner, and if they had died on the way to market, without the fault of Childs, the loss would have fallen upon Potter, both by the positive agreement of the parties, and the legal effect of the transaction between them as bailor and bailee.
There was, then, strictly speaking no mutuality or community of interest between them in the hogs. Childs had no interest in them other than as security for a debt, and to find in half the profits of their sale the measure of his reward for the use of his money, to be paid out of Potter’s property.
The relation of the parties was that of debtor and creditor, of bailor and bailee, and not that of partners. They had no mutual interest in the hogs in common as principals or proprietors, nor was either acting as principal for himself and agent for the other. If, however, that relation could be said to exist after the hogs were delivered to Childs, there is no ground for an inference that the debt to Harvey, previously contracted by Potter, was incurred upon the authority of Childs. On the contrary, the facts rebut any implication of such authority, and are consistent only with the supposition that the debt was incurred without authority from Childs, who was doubtless no less surprised to learn of the debt than Harvey was, after the failure of Potter, to find the existence of a rule of law under which he had unwittingly given credit to another and responsible party. We may, in conclusion, therefore, well adopt in this case tlie language of Judge Story (Part., see. 36): “Now, it is incumbent upon those who insist that a partnership exists between the parties, as to third persons, *326 by mere operation of law, in opposition to their own intention, to establish that in the given ease, under all the circumstances, there is such a rule, and that it is strictly applicable.”
This disposes of tbe material question made by the record. The court of common pleas gave judgment in favor of the plaintiff, against both Childs and Potter. The district-court, on error, reversed the judgment as to Childs. It follows that the judgment of the district court must be affirmed.

Judgment accordingly.