PARCHEN ET AL., appellants, v. ANDERSON ET AL., respondents.

PARTNERSHIP, HOW CREATED — *Sharing in profits not conclusive.*— Where there is no partnership *inter se* there can be none as to third persons, unless the party sought to be held as a partner has, by his acts, put himself in such a position that he is estopped from denying that he is a partner. But the weight of modern authority is, that the mere sharing of profits, although cogent evidence of a partnership, is not conclusive, so as to make him who receives such profits a partner in the business or enterprise by which they are earned.

*Appeal from Second District, Silver Bow County.*

KNOWLES & FORBIS, for appellants.

W. W. DIXON and F. T. McBRIDE, for respondents.

WADE, C. J. This is an action on an account for goods, wares and merchandise alleged to have been sold by plaintiffs to the defendants, as partners, during the year 1881. There was a verdict and judgment for defendant Nickel, and a motion for new trial overruled, from the order overruling which, and from the judgment, the plaintiffs appeal.

The action is against Frederick C. Anderson, Rudolph Schoulder and Henry Nickel, who are charged as partners; and the question to be determined is whether, under the facts and the law, the defendant Nickel was a partner with the defendants Anderson and Schoulder, and, as such, liable to the plaintiffs with them for the goods aforesaid.

It appears that a part of the goods were charged to Anderson & Co., and a part of them to Anderson and Schoulder; that Anderson ordered the goods, and that plaintiffs did not know who were the members of the firm. There is no claim that the defendant Nickel held himself out as a partner in the firm of Anderson & Schoulder, or that the plaintiffs were induced to give credit to the firm by reson of Nickel being a member of it, or by reason of any act or representation of his. It further appears that Anderson and Schoulder were about to commence, or were working the Centennial quartz mill, when, on or about the 1st day of April, 1881, Anderson went to Nickel and asked him if he could let Schoulder have $500, to which Nickel replied that he could, and that night Anderson and Schoulder went to the shop of Nickel and he let Schoulder have $500 in consideration of the following agreement, which was reduced to writing and signed by Anderson and Schoulder at the time, viz.: "In consideration of $500 we sell one-fourth of the net profits in the Centennial mill to Henry Nickel."

A few days subsequent to the execution of this agreement, finding that the same had no date, Nickel, as he claims in his testimony, went to Schoulder and had him execute his note for $500, dated April 1, 1881, to him, Nickel, he thinking that the agreement was not good, because the same had no date, but he retained the agreement, and the note was delivered to him.

Anderson testified that the note was not given until sometime in the following August, after the attachment in this case had been issued; that "Nickel asked Schoulder to give him a note for $500 so he could show it and prove he was not a partner, and so he would not be attached when the sheriff came down to serve the paper," all of which Nickel denied.

The rights of these parties must be determined by the effect to be given to this purchase of one-fourth of the net profits of the mill. If, as Anderson claims, the note

was executed to conceal the fact that Nickel was a partner with Anderson and Schoulder, it was an idle thing to have done, unless he was in fact a partner, and whether he was, or not, must be determined by the terms of the agreement, and the situation and acts of the parties; and we are confronted with this proposition: Did the sale by Anderson and Schoulder, and the purchase thereof by Nickel, of one-fourth of the net profits in the Centennial mill, in and of itself, make Nickel a partner, a principal with Anderson and Schoulder in the business by which such profits were to be earned? Nickel did not hold himself out, or suffer himself to be held out, as a partner, either to the public at large or to these plaintiffs. He is not, therefore, a partner by estoppel. He declares in his testimony, and there is no circumstance or act to contradict him, that he did not intend to become a partner. He is not, therefore, a partner by intent; and if a partner at all, he becomes so by the force and operation of his purchase of the one-fourth of the net profits of the mill, and by that alone. There is no doubt but that the agreement is competent evidence, and strong evidence, that Nickel became a partner in the mill; but does the bare fact of sharing the profits furnish an arbitrary test by which a person, not ostensibly a partner, is, by operation of law, to be held a partner? This question has been much considered by judges and text writers, and the authorities are not entirely harmonious. But the tendencies of the more modern authorities, both English and American, is towards the doctrine that the sharing of profits is evidence that he who shares them is a partner, but not conclusive evidence; the true test being, whether there is such a participation in and sharing of the profits as to constitute the relation of principal and agent between the person taking the profits and those actually carrying on the business.

In the case of *Eastman* v. *Clark*, 53 N. H. 276, decided in 1873, the court says: " It has been supposed a sharing

profit test, with divers exceptions and qualifications, was at one time established by the authorities. It has been supposed that it was established in the latter part of the last century; that it was settled in the class of cases generally ranged under the leading case of *Waugh* v. *Carver*, 2 H. Bl. 235. That it was upheld until 1860, and that it was then overthrown by the decision of *Cox* v. *Hickman*, 99 E. C. L. 47; 8 House of Lords Cases, 268. *Cox* v. *Hickman*, and the subsequent English cases, maintain that there is no such test; that the question of partnership liability is a question of the liability of a principal; that, so far as it is a question of law, it is governed by the general doctrines called law of agency, or law of principal and agent, when applied in a case of an agent and one principal, and called law of partnership, when applied in a case where the agent is a joint principal; and that, so far as it is a question of fact, sharing profits is evidence tending to show that the sharer is a principal. From 1866 to the present time, that has been held to be the common law of England.

" But what was the meaning and effect of the English cases before 1860? This is an important question, for this reason, among others, that before 1860 the American authorities were generally intended to be a mere following of the English; and when we ascertain the meaning and effect of the English cases before 1860, we shall learn what the mass of American authorities were intended to be." The judge then goes into a careful history and analysis of the English cases for nearly one hundred years prior to 1860, commencing with that of *Bloxham* v. *Pall*, 2 Wm. Bl. 998, in 1775; *Grace* v. *Smith*, and *Waugh* v. *Carver*, 2 H. Bl. 235, in 1793, in which the sharing profit test had its birth; reviewing *Hoare* v. *Dawes*, 1 Doug. 371, 1780; *Cooper* v. *Eyre*, 1 H. Bl. 37, 1778; *Steville* v. *Robertson*, 4 D. & E. 720; *Benjamin* v. *Porteous*, 2 H. Bl. 590; *Wilkinson* v. *Frasier*, 4 Esp. 182, 1802; *Hasketh* v. *Blanchard*, 4 East, 144, 1803; *Dry* v. *Boswell*, 1 Camp.

329, 1808; *Wish* v. *Small,* 1 Camp. 331, 1808; *Ex parte Garland,* 10 Ves. 110, 1804; *Barton* v. *Hanson,* 2 Jamet, 49, 1809; *Waland* v. *Elkins,* Hoet's N. P. 227; *Gonthwaite* v. *Duckworth,* 12 East, 421, 1810; *Ex parte Hamper,* 17 Ves. 403, 1811; *Wightman* v. *Toronver,* 1 M. & S. 412, 1813; *Waland* v. *Elkins,* 1 Stark, 272, 1816; *Cheap* v. *Cramond,* 4 B. & Ald. 663, 1821; *Fromont* v. *Coupland,* 2 Bing. 170, 1824; *Smith* v. *Watson,* 2 B. & C. 404, 1824; *Dickinson* v. *Vapley,* 10 B. & C. 128, 1829; *Fox* v. *Clifton,* 6 Bing. 776, 1830; id. 9 Bing. 115, 1832; *Ex parte Chuch,* 8 Bing. 409, 1832; *Green* v. *Busley,* 2 Bing. N. C. 108, 1835; *Owen* v. *Body,* 5 A. & E. 28, 1836; *Bond* v. *Pittard,* 3 M. & W. 357, 1838; *Wilson* v. *Whitehead,* 10 M. & W. 503, 1842; *Pote* v. *Eyton,* 3 C. B. 32, 1846; *McAlpine* v. *Mangnall,* 3 C. B. 496, 1846; *Barry* v. *Nesham,* 3 C. B. 641, 1846; *Heyhoe* v. *Berge,* 9 C. B. 431, 1850, and then says: "Such are the most important English cases, before *Cox* v. *Hickman,* 1860, relating to the subject of a sharing profits test. Whatever loose general notions may have been entertained as to the effect of these cases, they do not establish such a test in an unqualified form. They can be arrayed as a mass of authorities overruled by *Cox* v. *Hickman* and the subsequent cases, which have settled the law for England, that sharing profits, in a general unlimited sense, is not a test."

"Neither is such a test established by a preponderance of the weight of American cases decided without reference to *Cox* v. *Hickman.* The subject has been much considered in Massachusetts, and the result is far from being a simple absolute sharing profits test. *Reynolds* v. *Tappan,* 15 Mass. 370; *Rice* v. *Austin,* 17 id. 197; *Baxter* v. *Rodman,* 3 Pick. 435; *Grozier* v. *Atwood,* 4 id. 234; *Cutler* v. *Winsor,* 6 id. 335; *Turner* v. *Bissell,* 14 id. 192; *Denny* v. *Cabot,* 6 Met. 82; *Bradley* v. *White,* 10 id. 303; *Holmes* v. *O. C. R. R.* 5 Gray, 58; *Fitch* v. *Harrington,* 13 id. 468; *Julis* v. *Ingalls,* 1 Allen, 41; *Gunnison* v.

*Langley,* 3 id. 337; *Pratt* v. *Langdon,* 12 id. 544; *S. C.*
97 Mass. 97.   Sometimes such a test seems to be recog-
nized with the qualification 'as principal.'   *Loomis* v.
*Marshall,* 12 Conn. 69; *Berthold* v. *Goldsmith,* 24 How.
536–548; Collyer on Part. book 1, ch. 1, sec. 25; Story on
Part. secs. 49, 54, 55.   Of course if one shares profits as
a principal — *i. e.,* in the capacity as a principal — he is
a principal.   And so he is if he does anything else in
that capacity.   When sharing profits is accepted as a
test, it is almost universally with this qualification, that
if the profits are received as compensation for services,
or payment of any debt, sharing them is not a test.   The
number of cases that favor an unqualified sharing profits
test is hardly appreciable among the vast number op-
posed to it.  . . .   The sharing profits test, in this
modified form, enveloped in and consolidated with its
mass of qualifications and exceptions, the only form in
which it can be claimed to be established by the authori-
ties, is nothing but the elementary doctrine of the
liability of a principal, disclosed or undisclosed, on an
authorized contract made by his agent; which is the
doctrine of *Cox* v. *Hickman* and the subsequent English
cases.   *Cox* v. *Hickman,* Beavan, 164; 25 L. J. Ch. 142;
18 C. B. 617; 3 C. B. (N. S.) 523; 8 H. L. Cases, 268; 9
C. B. (N. S.) 47; *Kilshaw* v. *Jakes,* 3 B. & S. 847; *Bul-
len* v. *Sharp,* 18 C. B. (N. S.) 614; *Redpath* v. *Wigg,* L.
R. 1 Ex. 335; *Easterbrook* v. *Barker,* L. R. 6 C. P. 1;
*Holme* v. *Hammond,* L. R. Ex. 218; *Shaw* v. *Galt,* 16
Ir. Com. Law, 357; *Re E. & I. C. & U. S. A.* 1 Hem-
ming & Miller, 85; *Mallow* v. *Court of Wards,* L. R. 4
P. C. 419; *Noakes* v. *Barlow,* 20 W. R. 388; 26 L. I. (N.
S.) 136; *Ex parte Macmillan, re Whittaker,* 24 L. T.
(N. S.) 143."

In the case of *Cox* v. *Hickman, supra,* Lord Carnworth
said: " A right to participate in the profits is in general
a sufficiently accurate test; for a right to participate in
profits affords cogent, often conclusive, evidence that the

trade in which the profits have been made was carried
on in part for, and on behalf of, the person setting up
such a claim.   But the real ground of the liability is,
that the trade has been carried on by persons acting on
his behalf.   When that is the case, he is liable to the
trade obligations, and entitled to its profits, or to a share
of them.   It is not strictly correct to say that his right
to share the profits makes him liable to the debts of the
trade.   The correct mode of stating the proposition is to
say that the same thing that entitles him to the one
makes him liable to the other; namely, the fact that the
trade has been carried on in his behalf, that is, that he
he stood in the relation of principal towards the persons
acting ostensibly as the traders, by whom the liability
has been incurred, and under whose management the
profits have been made.   I can find no case in which a
person has been made liable as a dormant or sleeping
partner, in which the trade might not fairly be said to
have been carried on for him, together with those osten-
sibly conducting it, and when, therefore, he would stand
in the position of principal towards the ostensible mem-
bers of the firm as his agents."

Commenting on this statement of Lord Carnworth,
the court, in *Eastman* v. *Clark, supra,* says: " By ' a
sufficiently accurate test,' he meant satisfactory evidence.
His remark suggests how easily a piece of evidence
could be transformed into a legal test *sub modo,* by tri-
bunals accustomed, as English courts are, to deliver their
judgment on questions of fact.   When Lord Carnworth
said sharing profits affords cogent evidence of a partner-
ship, he expressed his opinion on a question of fact; and
the evident soundness of such an opinion tends to oblit-
erate the distinction between the law and the fact of the
subject.   Sharing profits, in the absence of all other
evidence, would, as a matter of fact, be cogent evidence
of a partnership; but every item of cogent evidence is
not a legal test; it moreover is generally not impossible

to have other evidence in a case besides sharing profits; whether it is cogent or weak depends upon its character, explained by other circumstances."

Mr. Lindley, in his valuable work on partnership (1 Lind. Part. 42), commenting on the cases subsequent to that of *Cox* v. *Hickman,* says: "There can be no doubt that in all these cases the decisions would have been the other way had they occurred before *Cox* v. *Hickman;* and they are particularly valuable as showing that the principles on which that case was decided by the House of Lords may now be safely relied upon in opposition to the old rule which before that important decision was considered too firmly settled to be questioned. In fact, the strong tendency of the above decisions is to establish the doctrine that no person who does not hold himself out as a partner is liable to third persons for the acts of persons whose profits he shares, unless he and they are really partners *inter se;* and it is perhaps not going too far to say that this is now the law. For the guidance, however, of those who may think the writer has gone too far in representing the old law as completely suspended, the following more limited propositions are submitted, as at least conclusively established, and as applicable even in cases not within 28 and 29 Vict. c. 86:

"1. That persons who share the profits of a business are, like other persons, only liable for the acts of themselves, and by their real or ostensible agents.

"2. That whether, in any particular case, the relation of principal and agent does, or does not, exist between one person who carries on a business, and another person who shares its profits, depends, not upon the mere fact that the business is carried on, more or less, for the benefit of the latter, but upon all the circumstances of the case.

"3. That the relation of principal and agent is not constituted merely by an agreement which entitles one person to share the gross returns of a business or adventure conducted by another.

"4. That the relation of principal and agent is not constituted merely by an agreement which entitles one person to be paid definite sums out of the profits made by another.

"5. That the relation of principal and agent is not constituted merely by an agreement which entitles one person to be paid sums varying with the profits made by another.

"6. That the relation of principal and agent is not constituted merely by the existence of a trust entitling one person to share the profits made by another.

"7. That *prima facie* the relation of principal and agent is constituted by an agreement entitling one person to share the profits made by another to an indefinite extent; but that this inference is displaced, if it follows from the whole agreement that no partnership agency was really intended.

"8. That the courts, in all these as in other cases, will be astute to defeat fraud and to hold partnerships to be created if they are intended, although the intention may be carefully concealed."

The intention of the parties must control. The relation of partners is formed by contract, or by the acts of the parties which amount to a contract. Says Mr. Collyer, in his able work (1 Collyer on Part. 7, note 9): "A partnership *inter se* results from the intention of the parties, to be gathered from the contract, if there be one, or, if not, from their relation to, and dealings with, the property and each other. A mere community of interest in property does not create the relation, but it must be evident that the parties intended to create it, and must be voluntary. The intent of the parties, as expressed in the contract, if there be one, or, if there is no contract, as gathered from the transaction itself, and their manner of dealing with the common property, will control, so far as the rights of the parties themselves are concerned; for, being the creation of a contract express or implied, the parties, as between themselves, cannot be

made to assume a relation towards each other which they have expressly contracted not to assume, or which was their evident intent not to assume.

" In the absence of a contract, this intent is to be gathered from the acts of the parties and the character of the transaction. If the parties deal with the property in which they have a joint interest, as partners, each sharing the profits arising from it, and paying his own proportion of the expenses for its maintenance, although no agreement, in fact, exists between them, they are partners *inter se,* their intent being gathered from their acts.

" But, if an agreement exists, this is the only evidence of the real *status* of the parties to each other." *Coulter* v. *Thomas,* 25 Vt. 73; *Robins* v. *Laswell,* 27 Ill. 365; *Stevens* v. *Fawcett,* 24 id. 483; *Phillips* v. *Phillips,* 49 id. 437; *Neihoff* v. *Dudley,* 40 id. 406; *Lintner* v. *Milliken,* 47 id. 178; *Clark* v. *Reed,* 11 Pick. 446; *Hazzard* v. *Hazzard,* 1 Story, U. S. 371; *Salter* v. *Ham,* 31 N. Y. 321.

If there is no partnership *inter se,* there can be none as to third persons, unless a party, by his acts, has put himself in such a position that he is estopped from denying that he is a partner. And as we have seen that the mere sharing of profits, since the case of *Cox* v. *Hickman,* does not, in England, make him who receives such profits a partner in the business or enterprise by which they are earned, it only remains for us to ascertain from the modern authorities if the same doctrine prevails in the United States.

In 1873 the supreme court of Missouri said: " It is true that in the case of *Waugh* v. *Carver,* 2 H. Bl. 247; vol. 2, part II, Smith's Leading Cases, 674, and in other cases referred to, it has been held that one who receives a share in the general profits is liable to third persons for the losses and debts contracted in the prosecution of the business, and it is upon this principle, as stated in

that case, that the plaintiffs seem to rely for a recovery in this case. The rule as laid down in *Waugh* v. *Carver* has not been adhered to in England or in this country, but a rule more in harmony with reason and justice has been generally adopted.

"Judge Story, in his work on Partnership, in treating of this subject, states: 'In short, the true rule, *ex aequo et bono*, would seem to be, that the agreement and intention of the parties themselves should govern all cases. If they intend a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons.' Story, Part. 6th ed. sec. 49, and note, where the authorities are discussed. In order to constitute a communion of profits between the parties, which shall make them partners, the interest in the profits must be mutual. Each person must have an interest in the profits as a principal trader. . . . The single circumstance that he is to have a share of the profits does not necessarily make one a partner so as to bind him by the acts or admissions of one who carries on the business. *Buckle* v. *Ekart*, 1 Denio, 337; *Denny* v. *Cabot*, 6 Met. 82; *Turner* v. *Bissell*, 14 Pick. 192; *Devinel* v. *Stone*, 30 Me. 384; *Wiggins* v. *Graham*, 51 Mo. 17. From these authorities, it will be seen that one who receives a part of the profits is not necessarily a partner, even as to third persons, and in the present case, the statement of the defendant given in evidence must all·be taken together; he denied that he was a partner, but admitted that he had an interest in the profits; this he might have, and still not be a partner." *Campbell* v. *Dent*, 54 Mo. 332. In 1876 the supreme court of Ohio (28 Ohio

St. 321, *Harvey* v. *Childs & Potter*) said: "Although a partnership may be said to rest upon a communion of profits, nevertheless, the foundation of the liability of one partner for the acts of another is the relation they sustain to each other, as being each principal and agent. That relation, it would seem, then, constitutes the true test of a partnership liability, and rests upon the just foundation that the joint liability was incurred on the express or implied authority of the party sought to be charged. But, if the relation of principal and agent be regarded as the test of a partnership and consequent joint liability, the question still remains, what shall be deemed sufficient evidence of that relation, or to raise the implication of authority to incur the liability in question? To this end numerous tests have been supposed to exist; but the best considered, and the least objectionable, is that of a community of interest in the profits of a business or transaction as a principal or proprietor. Par. on Part. 71; Collyer on Part. secs. 25, 44. See, also, Story on Part. secs. 36, 38, 60; *Berthold* v. *Goldsmith*, 24 How. 536. But this test is valuable as a rule chiefly because it evinces a relation between the parties, where each may reasonably be presumed to act for himself and as agent for the others, and to that extent establishes the fact that the liability was incurred on the authority of all so participating in the profits. Participation in the profits of a business, however, can never be regarded as a rule so universal and unrelenting as to be unjustly applied to a case where a debt is incurred by one who cannot be said to be acting in the particular as the agent or on behalf of the party sought to be charged. Therefore, on principle, the true test of a partnership at last is left to be that of the relation of the parties as principal and agent, to be proved by any competent evidence; for when they sustain that relation, a joint liability may be said to have been incurred by the authority or on behalf of each of the parties so related. The tendency of the more

modern authorities, both English and American, is to this conclusion.

" The case of *Cox* v. *Hickman*, decided by the House of Lords in 1860, has become a leading case on this subject. It is summarized in the subsequent case of *Bullen* v. *Sharp*, 1 Law Reporter, 112, by Blackburn, J., as follows: 'I think that the *ratio decidendi* is, that the proposition laid down in *Waugh* v. *Carver*, viz., that a participation in the profits of a business does, of itself, by operation of law, constitute a partnership, is not a correct statement of the English law, but that the true question is, as stated by Lord Carnworth, whether the trade is carried on, on behalf of the person sought to be charged as a partner, the participation in the profits being a most important element in determining the question, but not being, of itself, decisive; the test being, in the language of Lord Wensleydale, whether it is such a participation in the profits as to constitute the relation of principal and agent between the person taking the profits and those actually carrying on the business.' Add. on Cont. 163. These cases were decided before the passage of the act of parliament in relation to partnerships. But, so far as relates to this question, in a subsequent case, Bramwell, J., declared, in effect, that the act was only declaratory of the common law, as held in the case of *Cox* v. *Hickman*. *Holme* v. *Hammond*, 7 Law, 218, 236. The question was much considered in *Eastman* v. *Clark*, 53 N. H. 276, where the authorities are fully collated and ably reviewed. The case was decided in 1872. The conclusion arrived at is stated by Smith, J., as follows: 'The real ultimate question in all cases like the present is one of agency. Did the person sought to be charged stand in the relation of principal to the person contracting the debt? Participation in the profits is not decisive of the question, except so far as it is evidence of the relation of principal and agent between the persons taking the profits and those actually carrying on the business.

Whether such relation existed is a question of fact. Upon the trial of that question, proof of a right to participate in the profits would be a cogent and often practically conclusive piece of evidence to establish the existence of that relation; but there is no sound foundation for an arbitrary rule of law requiring courts or jurors to regard participation in the profits as a decisive test, which will, in all instances, necessitate the conclusion that the participator is liable for the debts.' In the absence of any known stipulation to the contrary, every party to a trading firm, within the scope of the joint business in contemplation, is clothed with implied authority to enter into simple contracts on behalf of the firm in furtherance of the business of the partnership, and thereby bind each member of the firm. Where, therefore, as in the case of *Wood* v. *Vallette*, 7 Ohio St. 172, and the later case of *Leggett* v. *Hyde*, 58 N Y. 272, money is advanced, to be used in a trading business, and returned in a year with a share of the profits made during that time, it may well be implied that the business was conducted on behalf and by the authority of the person advancing the money and sharing the profits, for it is to the continuing trade, in the ordinary way, that he looks for his profits.

"But such cases are plainly distinguishable from one where money is advanced to be embarked in a single transaction where no credit is contemplated. In such a case there is no ground for the implied authority to incur debts, such as exists in regard to a general trading business." Add. on Contracts, 161.

In 1881 Judge Cooley, in *Beecher* v. *Bush*, 45 Mich. 193, speaking for the supreme court of Michigan, said: "It is nevertheless possible for parties to intend no partnership and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their

agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable.  But every doubtful case must be solved in favor of their intent; otherwise we should 'carry the doctrine of constructive partnership so far as to render it a trap to the unwary.'  Kent, C. J., in *Post* v. *Kimberly*, 9 Johns. 470.  We have then a case in which the party sought to be charged has not held himself out, or suffered himself to be held out, as a partner, either to the public at large or to the plaintiff, and has not intended to form that relation.  He is not, therefore, a partner by estoppel nor by intent; and if he is one at all it must be by construction of law.  What, then, are the *indicia* of partnership in this case; the marks which force that construction upon the court, irrespective of the intent of the parties; that, in fact, control their intent and give to the parties bringing suit rights which they were not aware of when they sold the supplies?  In the elaborate and able brief which has been presented in behalf of the defendants in error, it is conceded that the fact that Beecher was to receive each day a sum 'equal to one-third the gross receipts and gross earnings' for the day would not necessarily make him a partner; what is claimed is that the fact is 'cogent evidence' that Beecher was to participate in the results of the business in a manner that indicated he was a principal in it, and was not receiving compensation for the use of the property merely.

"The view of the law here suggested is undoubtedly correct.  There may be a participation in the gross returns that would make the receiver a partner, and there may be one that would not.  The question is, in what capacity is participation had?  Gross returns are not profits, and may be large when there are no profits; but it cannot be predicated, either of gross returns or profits, that the right to participate is conclusive evidence of partnership.  This is the settled law, both in England and in this country, at this time, as is fully shown by

the authorities cited for the defendants in error. It was recognized in *Hinnman* v. *Littell*, 23 Mich. 484; and in New York, where the doctrine that participation in profits proves partnership has been adhered to most closely, it is admitted there are exceptions. *Edgers* v. *Crawford*, 76 N. Y. 97."

Judge Cooley then quotes from *Cox* v. *Hickman, supra,* the language heretofore quoted in this opinion, and says: "There is something understandable by the common mind in this test; there is nothing artificial or arbitrary about it; it falls in with reason, and enables every man to know, when he makes his business arrangements, whether he runs the risk of extraordinary liabilities contracted without his consent or approval. It is said, and we believe justly, in *Bullen* v. *Sharp*, L. R. C. P. 86, that the decision in *Cox* v. *Hickman* brought back the law of England to what it should be, and Mr. Baron Bramwell, referring to what was declared to be law in *Waugh* v. *Carver,* expressed the hope 'that this notion is overruled,' and adding that it is 'one which I believe has caused more injustice and mischief than any bad law in our books.' It is certainly overruled very conclusively in Great Britain. *Kilshaw* v. *Jakes*, 3 B. & S. 847; *Shaw* v. *Ganet*, 16 Irish C. & R. 357; *Holme* v. *Hammond*, L. R. 7 Exch. 218; *Ex parte Delhasse*, 7 Ch. Div. 511. And though in New York the courts, hampered somewhat by early cases, have not felt themselves at liberty to adopt and follow the decision in *Cox* v. *Hickman* to the full extent, it would be easy to show that the American authorities in the main are in harmony with it."

The judge then cites and comments upon the following cases: *Champion* v. *Bostwick*, 18 Wend. 175; *Eastman* v. *Clark*, 53 N. H. 276; *Farmers' Ins. Co.* v. *Ross*, 29 Ohio St. 429; *Mussier* v. *Trumpbour*, 5 Wend. 274; *Everitt* v. *Chapman*, 6 Conn. 347; *Loomis* v. *Marshall*, 12 Conn. 69; *Moore* v. *Smith*, 19 Ala. 774; *Bowman* v. *Bailey*, 10 Vt. 170; *Price* v. *Alexander*, 2 Green (Ia.),

427; *Dunham* v. *Rogers*, 1 Pa. St. 255; *Denny* v. *Cabot*, 6 Met. 82; *Perrine* v. *Hankinson*, 11 N. J. 181; *Holmes* v. *Old Colony R. R. Co.* 5 Gray, 58; *Bradley* v. *White*, 10 Met. 303; *Harvey* v. *Childs*, 28 Ohio St. 319, and says: " It is needless to cite other cases.  They cannot all be reconciled; but enough are cited to show that, in so far as the notion ever took hold of the judicial mind that the question of partnership or no partnership was to be settled by arbitrary tests, it was erroneous and mischievous, and the proper corrective has been applied.  Except when one allows the public or individual dealers to be deceived by the appearances of partnership, when none exists, he is never to be charged as a partner, unless, by contract and with intent, he has formed a relation in which the elements of partnership are to be found.  And what are these?  At the very least the following:  Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers, however, by agreement between the parties themselves, may be restricted at option to the extent of even making one the sole agent of the others, and of the business.  .  .  . We think there can be no such thing as a partnership as to third persons, when as between the parties themselves there is no partnership, and the third persons have not been misled by concealment of facts, or by deceptive appearances."

In 1883 the supreme court of the United States, in *Thompson* v. *First Nat. Bank of Toledo*, 111 U. S. 540, by Mr. Justice Gray, said: " Mr. Justice Lindley in his treatise on the law of partnership, sums up the law on this point as follows:

" ' The doctrine that a person holding himself out as a partner, and thereby inducing others to act on the faith of his representations, is liable to them as if he were, in fact, a partner, is nothing more than an illustration of the

general principle of estoppel by conduct.' 'The expression in *Waugh* v. *Carver*, "if he will lend his name as a partner, he becomes, as against all the rest of the world, a partner," requires qualification, for the real ground on which liability is incurred by holding one's self out as a partner is, that credit has been thereby obtained.' This is put with great clearness by Mr. Justice Parke, in *Dickinson* v. *Vapley:* 'No person can be fixed with liability on the ground that he has been held out as a partner, unless two things concur, viz.: first, the alleged act of holding out must have been done either by him or by his consent; and, secondly, it must have been known to the person seeking to avail himself of it. In the absence of the first of these requisites, whatever may have been done, cannot be imputed to the person sought to be made liable, and in the absence of the second, the person seeking to make him liable has not in any way been misled.' Lindley on Part. (1st ed.) 45–47; 4th ed. 48–50.

"The current of authority in this country is in the same direction. *Benedict* v. *Davis*, 2 McLean, 347; *Hicks* v. *Cram*, 17 Vt. 449; *Fitch* v. *Harrington*, 13 Gray, 469; *Wood* v. *Pennell*, 51 Me. 52; *Sherrod* v. *Langdon*, 21 Ia. 518; *Kirk* v. *Hartman*, 63 Penn. St. 97; *Hefner* v. *Palmer*, 67 Ill. 161; *Cook* v. *Penrhyn Slate Co.* 36 Ohio St. 135; *Uhl* v. *Harvey*, 78 Ind. 26. The only case cited at the bar, which tends to support the ruling below, is the decision in the commission of appeals, in *Poillon* v. *Secor*, 61 N. Y. 456. And the judgment of the court of appeals in the later case of *Central Savings Bank* v. *Walker*, 66 N. Y. 424, clearly implies that, in the opinion of the court, a person not, in fact, a partner, cannot be made liable to third persons on the ground of having been held out as a partner, except upon the principle of equitable estoppel, that he authorized himself to be so held out, and that the plaintiff gave credit to him." Says Mr. Justice Clifford, in *Berthold* v. *Goldsmith*, 24 How. 542: "Participation in the profits, however, will not alone

create a partnership between the parties themselves as to the property, contrary to their intention. . . . Actual participation of the profits, as a principal, we think creates a partnership, as between the parties and third persons, whatever may be the intention in that behalf, and notwithstanding the dormant partner was not expected to participate in the loss beyond the amount of the profits."

Says Mr. Parsons (Pars. on Part. 2d ed. 73): "And the same principle holds us to this other conclusion, that a mere payment, or promise to pay, out of the profits, a sum of money, as a specific portion of the profits, does not necessarily constitute the payee a partner, and gives him no interest in the profits, and no right to the profits, but only a personal claim against the promisor for such money, or for such a share of the profits after they are ascertained and may be divided. If two men were bargaining for a house and the seller says: 'Your business is so prosperous, you can afford to pay me all I ask;' and the buyer replies, ''You mistake, the profits of my business are not so large as you think;' and the seller rejoins, 'Well, I will, at all events, take one-fourth part of your next year's profits for the house,' and a written contract is executed on these terms, it would be simply absurd to contend that this sale of a house made the seller liable for all the business debts of the buyer."

Absurd as this may have been, it is no more so for buying one-fourth of the profits by the sale of a house, than purchasing the same for money. In neither case would the purchaser become a partner: first, for the reason that the parties did not so intend, and second, the transaction did not establish the relation of principals and agents for each other in the purchaser's business. The real question is one of agency. Nickel, by the purchase of one-fourth of the net profits of the Centennial mill, did not thereby establish the relation of principal to the persons contracting the debt. Whether this relation

exists or not is a question of fact, and while participation in the profits is competent evidence, it is not conclusive of the question. Such participation does not necessarily create a community of interest in the business in which the profits are to be earned; it does not necessarily and by operation of law establish the relation of principals and agents for each other as between the seller and the purchaser of such profits; and it did not necessarily make Anderson and Schoulder the agents of Nickel in conducting and carrying on the business of the Centennial mill. If Nickel was not a partner with these parties *inter se,* he cannot be as to third persons, unless, by some act of his, he is estopped from denying that the relation exists. As to these plaintiffs, Nickel was not a partner by estoppel. They trusted their goods to Anderson and Schoulder. They did not know and had no reason to believe that Nickel was a member of the firm. There are no equities in their favor as against Nickel, and there is no justice in their claim as against him unless he was in fact a member of this partnership. Net profits are the results of business that has already been transacted and concluded. There would be no claim for a fourth of said profits until they had been earned and ready for division. A person might purchase an interest in the net profits of a business and have no intention of becoming a partner therein, and if there was no contract expressing such intention, and no connection with or control over the common property by which such intention could be inferred, then there would be no partnership *inter se,* and if not, there could be none as to third persons, except by estoppel.

Partnership as between the parties themselves is a voluntary contract between two or more persons, for joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a communion of the profits between them, and for the purpose of carrying on a legal trade, business or ad-

venture. 1 Collyer on Part. 6th ed. 7. Partners are joint tenants in the stock and effects of the partnership. Id. 179. Whatever at the commencement of a partnership is thrown into the common stock, and whatever has from time to time, during the continuance of the partnership, been added thereto, and obtained by means thereof, whether directly, by purchase, or circuitously, by employment in trade, belongs to the firm, unless the contrary can be shown. Lindley on Part. 547-8.

It is a general principle that governs all partnerships in trade, that each individual partner constitutes the others his agents, for the purpose of entering into all contracts for him within the scope of the partnership. Id. 269.

By the purchase of one-fourth of the net profits of the Centennial mill, Nickel did not thereby become the owner of any interest in the mill or in the partnership property of Anderson and Schoulder; he did not thereby become a joint tenant with them in such property, and he did not thereby constitute them his agents for carrying on the business of the mill.

It is unnecessary to consider the questions raised upon the instructions to the jury, for if by this purchase of net profits Nickel did not become a partner with Anderson and Schoulder, as between themselves, and is not a partner as to these plaintiffs by virtue of his conduct, then the plaintiffs' claim must fail.

The judgment is affirmed, with costs.