### LOTT et al. v. YOUNG et al.

#### (Circuit Court of Appeals, Ninth Circuit. May 13, 1901.)

#### No. 649.

BANKRUPTCY—EVIDENCE OF PARTNERSHIP.

A person cannot be held a member of a partnership as to third persons unless he is in fact a partner as between himself and the other members of the firm, or has by his acts placed himself in such a position that he is estopped to deny that he is a partner. Evidence that a person has in his possession, and claims to own, goods which were sold to a bankrupt mercantile firm, or even that he obtained such goods without consideration, through a conspiracy with known members of the firm, and with intent to defraud its creditors, while it may establish fraud which will entitle the trustee in bankruptcy to recover such goods, has no tendency to prove that he was a partner, to warrant his adjudication as a bankrupt as one of the members of the firm, in the absence of any evidence tending to show a partnership agreement, or that he held himself out as a partner.

Appeal from the District Court of the United States for the District of Montana.

In Bankruptcy. Appeals by Fannie J. Lott and Lemuel W. Nixon from a decree adjudicating them bankrupts, as partners in the Silver City Mercantile Company.

This case presents many peculiar features, and the transcript contains a mass of evidence that might very well have been omitted, in so far as the issues raised by this appeal are involved. The proceedings are in bankruptcy, and may be briefly summarized as follows: Numerous creditors of Samuel Nixon, proprietor of the Silver City Mercantile Company, in Butte, Mont., filed a petition in the district court for the district of Montana to have him adjudged a bankrupt. Thereafter, on March 14, 1900, these creditors, with others, joined in filing an amended petition in bankruptcy, alleging that Samuel Nixon, Samuel M. Nixon, Lemuel W. Nixon, James F. Lott, and Fannie J. Lott were co-partners doing business under the firm name of the Silver City Mercantile Company, and praying that said co-partners be adjudged bankrupts. This amended petition is very lengthy, covering 25 pages of the printed record. It states many specific acts of bankruptcy alleged to have been committed by the Silver City Mercantile Company and the parties constituting the same. It is alleged, among other things, that the mercantile company did on the 30th day of December, 1899, sell or attempt to sell the property and partnership effects at its place of business, 457 East Park street, city of Butte, Mont., to one L. E. Cook, for an inadequate amount; that it allowed some of its creditors to obtain preferences; that the sale of the stock of goods at 457 East Park street, Butte, Mont., to one L. E.

Cook, was false and fraudulent; that no consideration passed therefor from Cook to the said co-partnership; that on or about the 1st day of July, 1899, Samuel Nixon, Samuel M. Nixon, and Lemuel W. Nixon, individually and as co-partners, conceived the plan, and did conspire, combine, and connive together to obtain, through false and fraudulent representations as to their credit, and as to the credit and financial standing of the Silver City Mercantile Company, large and valuable quantities of goods, wares, and merchandise from divers and sundry merchants, persons, partnerships, and corporations, to deceive them and defraud them thereof; that pursuant to said plan the said Samuel Nixon, Samuel M. Nixon, and Lemuel W. Nixon did during the month of July, 1899, purchase of S. C. Ashby, trustee in bankruptcy, what was known as the "Clarke and Talbott stock of goods," in the storeroom at 825–827 Front street, South Butte, Silver Bow county, Mont., and did purchase the same in the name of the said Samuel Nixon, as the Silver City Mercantile Company, and did place in charge thereof the said Lemuel W. Nixon, and did partially sell and dispose of the said stock of goods under the name of the Silver City Mercantile Company, mingling therewith large and valuable quantities of merchandise held by the said Silver City Mercantile Company at their store at 457 East Park street, Butte, Mont., theretofore obtained by false representations as aforesaid, and did, by a certain pretended, false, and fraudulent assignment, transfer and dispose of the same to Lemuel W. Nixon, and put him in charge thereof, ostensibly, as the sole and individual owner, without any consideration whatever, for the sole purpose, object, and intention of the parties to conceal large and valuable quantities of merchandise so obtained, and to defeat, hinder, and delay their creditors, and delay the creditors of the Silver City Mercantile Company; that before the 1st day of November, 1899, the said Samuel Nixon, Samuel M. Nixon, Lemuel W. Nixon, James F. Lott, and Fannie J. Lott did willfully, fraudulently, and unlawfully connive, conspire, and combine together to defeat, hinder, and delay and defraud the petitioning creditors herein, together with other creditors of the Silver City Mercantile Company, by opening a store at No. 949 North Main street, in Centerville, Butte, Mont., which store was to be operated by the said James F. Lott and Fannie J. Lott, who were and are, respectively, the father and mother in law of the said Samuel M. Nixon, and to stock the same with goods, wares, and merchandise obtained wholly or in great part from the stock and storeroom of the Silver City Mercantile Company at No. 457 East Park street, in the city of Butte, Mont., and to obtain the same fraudulently, and without giving any real, adequate, actual, sufficient, or valuable consideration therefor, and to conceal, make way with, transfer, and convey the same so as to prevent, hinder, delay, and defraud the creditors of the said mercantile company, and the individual members thereof; that, pursuant to said conspiracy and combination, large and valuable quantities of goods of the Silver City Mercantile Company were transferred to the Centerville store, and that James F. Lott and Fannie J. Lott received other large and valuable quantities of merchandise from the Mercantile Company's store, at East Park street, in Butte, Mont., without consideration: that on or about the 30th day of December, 1899, the said Lemuel W. Nixon did further conspire, confederate, combine, and collude with his brother, the said Samuel M. Nixon, and with his father, Samuel Nixon, to defeat, hinder, delay, and defraud the creditors of the Silver City Mercantile Company by making pretended purchases and assignments from the Silver City Mercantile Company to the said Lemuel W. Nixon of debts and accounts due the said mercantile company. To this petition Samuel Nixon made default, and judgment pro confesso was taken against him. Fannie J. Lott appeared separately, and denied that she had committed any acts of bankruptcy; denied that she was insolvent; denied that she "is now, or ever was, a co-partner" with any of the other parties herein, or either of them, or that she ever had any interest whatever in the Silver City Mercantile Company; and denied each and every charge of fraud, collusion, and conspiracy alleged against her; and affirmatively averred that she was the owner of the goods in the store at No. 949 North Main street, Centerville, Silver Bow county, Mont., etc. Lemuel W. Nixon denied all the averments in the petition as against him.

The case was called for trial before a jury, and a jury was duly impaneled. There was a controversy as to the issues that were to be tried by the jury. We quote from the record: "Mr. Clinton: May it please the court and gentlemen of the jury, this is an action by numerous creditors to force into involuntary bankruptcy Samuel Nixon, Samuel M. Nixon, L. W. Nixon, James F. Lott, and Fannie J. Lott. This action grew out of a certain store here, known as the Silver City Mercantile Company, which secured large credit from the creditors here and in all the jobbing centers tributary to Butte, Montana, and as a result of this indebtedness the Silver City Mercantile Company failed. We make certain charges of fraud against the different parties named herein; that they were co-partners doing business in Butte, Montana, and the action is to have them adjudged involuntary bankrupts. The creditors are nonresidents. The Court: The issue to be tried to this jury is simply the question of whether or not they are insolvent. Mr. McConnell: It is a question of partnership. The Silver City Mercantile Company is not a corporation. The question is, is it composed of co-partners? The Court: The question of who are partners can be tried by the court. Mr. Clinton: We also charge that they are conspirators; that they have conspired as such to defraud these creditors. The Court: Section 19a of the bankruptcy act provides as follows: 'A person against whom an involuntary petition has been filed shall be entitled to have a trial by jury, in respect to the question of his insolvency, except as herein otherwise provided. * * *' The only question to be tried by the jury is the question of the solvency of the persons. As to whether or not they are partners is a question to be tried by the court. Mr. Kirk: The petition was filed originally against Samuel Nixon, the father of S. M. Nixon. * * * It was directed against him as proprietor of the Silver City Mercantile Company. Thereafter a petition was filed in which these other persons were joined; the petition alleging that they are partners, and all interested with Samuel Nixon in the Silver City Mercantile Company. All have made an appearance, except Samuel Nixon, Sr.; and all who have appeared have filed their separate answers, and have denied that they were in any wise interested in the affairs of the Silver City Mercantile Company. * * * The only remaining question is, that we do not deny that the Silver City Mercantile Company committed certain acts of bankruptcy. I take it that the only question presented here is, were these other persons—are they—debtors of these petitioning creditors? Were they interested in the Silver City Mercantile Company, so that these petitioning creditors would have a right to inquire whether or not they are bankrupts? In other words, our whole contention is that we have nothing to do with any one interested in the Silver City Mercantile Company. They have set up in their petition fraudulent transfers of goods by the Silver City Mercantile Company to other persons. That is a matter which can only be determined in some subsequent proceeding, unless it is incidentally admitted for the purpose of determining whether or not these persons are co-partners. Section 18, subd. 'd,' of the bankruptcy act says: 'If the bankrupt, or any of his creditors, shall appear, within the time limited, and controvert the facts alleged in the petition, the judge shall determine, as soon as may be, the issues presented by the pleadings, without the intervention of a jury, except in cases where a jury trial is given by this act, and make the adjudication or dismiss the petition.' It therefore seems to me that the question here for the court to determine is whether or not these persons are partners. * * * The Court: Who demanded a jury? Mr. Kirk: So far as my clients are concerned, we have not. Mr. Maury: Our client is the only one who demanded a jury, and he is willing to waive a jury. Mr. McConnell: We represent S. M. Nixon, and we ask the court to determine the issues. Mr. Clinton: For the creditors, we also waive a jury. The Court: The jury will be excused. * * * Mr. McConnell: There are immaterial issues set out in the pleadings. The only question before your honor is the question of the members constituting the firm of the Silver City Mercantile Company. * * * Mr. Carroll: We charge that they are also conspirators, as well as bankrupts, and we have alleged in all these petitions and pleadings these various acts tending to show a conspiracy of the various parties. The Court: If you establish a conspiracy, what would you establish by it? I do not see, if it

was admitted that they were bankrupts, what particular figure it would cut in the matter; but that any act of conduct of these parties may be introduced in evidence upon the question of partnership. I would not like to decide in advance whether any particular matter was pertinent to the question of partnership here, and to the question of bankruptcy, because, while the parties have waived a jury, I cannot see at this time that all of the parties have admitted that the Silver City Mercantile Company was a bankrupt, and did these acts of bankruptcy." The court, after a hearing upon the evidence, found that all the parties above named, except James F. Lott, were co-partners doing business under the firm name of the Silver City Mercantile Company, and expressly found that James F. Lott, husband of Fannie J. Lott, appellant herein, was not a member of said co-partnership. An adjudication in bankruptcy was regularly made against all the parties who were found to be co-partners, and defendant James F. Lott was discharged from the proceedings. Fannie J. Lott and Lemuel W. Nixon alone appeal. They assign but one error, namely: "The court erred in holding said appellants, Fannie J. Lott and L. W. Nixon, to be members of said co-partnership in the Silver City Mercantile Company. There is no evidence to sustain the findings of the court that they were partners of Samuel Nixon and Samuel M. Nixon, doing business under the firm name and style of the Silver City Mercantile Company. And said appellants, each for himself, separately allege that the court erred in finding him to be a partner and member of said Silver City Mercantile Company."

McConnell & McConnell, John I. Kirk, and Pemberton & Maurey, for appellants.

W. E. Carroll, R. L. Clinton, L. P. Sanders, James M. Hinkle, J. L. Wines, T. A. Morrin, Alex Laist, Robert Coom, Breen & Mackle, Root & Clark, and W. A. Pennington, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the facts, delivered the opinion of the court.

It will be seen from the foregoing statement of facts that the only question to be determined by this court upon this appeal is whether or not Fannie J. Lott and Lemuel W. Nixon, or either of them, were partners in the Silver City Mercantile Company. This being the only issue, it is necessary at the outset to determine what facts are necessary to be proven in order to constitute a co-partnership. Samuel Nixon having made default, and Samuel M. Nixon having been found to be a partner and taking no appeal from such finding, it stands admitted that they were co-partners doing business under the firm name of the Silver City Mercantile Company. It is also admitted that the mercantile company had committed acts of bankruptcy prior to the institution of these proceedings. There is no pretense that there ever were any written articles of co-partnership, or any division of profits between Fannie J. Lott and Lemuel W. Nixon, or either of them, and the other parties. In fact, there is no direct evidence of any such partnership, so far as they are concerned. They are sought to be held as partners by circumstantial evidence of their acts and conduct in relation to the business of the mercantile company. Appellees admit that they have been unable to prove any details of the alleged partnership, or any evidence whatever as to

109 F.—51

what share of the profits each individual was to receive. In the course of their argument they say:

"To prove a secret partnership arrangement and fraudulent transactions among parties, it is impossible to prove all their specific acts and exact words, with the details of time and place of forming the secret understanding; and courts allow a wide latitude in the introduction of evidence, and receive as evidence every act and word having a tendency to prove any secret understanding between parties. For that reason we call the attention of the court to parts of the record disclosing many facts, any one of which alone might be insufficient to prove the case of petitioners, but, when taken together, lead irresistibly to the conclusion reached by the trial court."

We can readily imagine cases where this statement might have some application and force, but we apprehend that in all cases there must be some evidence tending to show the main fact. The mere fact that a man is shown to be an embezzler and a criminal—a man wholly unworthy of belief—does not tend to show that he is a partner in the Silver City Mercantile Company. A man or a woman may have entered into a conspiracy with the man or men proven to be the owners of the goods belonging to the mercantile company, to hinder, delay, and defraud the creditors, without being a member of that firm. The mere fact of such a conspiracy might be sufficient to establish fraud, but not to prove a partnership. What constitutes a co-partnership? The general rule may be stated as follows: A co-partnership is a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. A partnership exists where parties join together their money, goods, labor, or skill for the purposes of trade or gain, and where there is a community of profits. As these proceedings were instituted in Montana, we naturally look to the statutes of that state, to see whether or not they have any particular bearing upon this subject. The definition of a co-partnership is given in sections 3180 and 3181 of the Civil Code (1 Ann. Codes Mont. 1895, p. 1252) as follows:

"Sec. 3180. Partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them.

"Sec. 3181. A partnership can be formed only by the consent of all the parties thereto, and therefore no new partner can be admitted into a partnership without the consent of every existing member thereof."

Prior to the adoption of this Code the supreme court of the territory, in Parchen v. Anderson, 5 Mont. 438, 5 Pac. 588, following the decision in Wheatcroft v. Hickman, 99 E. C. L. 47, 8 H. L. Cas. 268, declared that where there is no partnership inter se there can be none as to third persons, unless the party sought to be held as a partner has by his acts put himself in such a position that he is estopped from denying that he is a partner; that the weight of modern authority is that the mere sharing of profits, although cogent evidence of a partnership, is not conclusive, so as to make him who receives such profits a partner in the business or enterprise by which they are earned. This decision became the rule of the common law of Montana, and the statute of the state virtually adopted the rule established by that decision.

Did the court err in finding that L. W. Nixon and Fannie J. Lott were co-partners in the Silver City Mercantile Company? It appears from the record that the Silver City Mercantile Company commenced business at East Park street, as the successor of George Andrews, on or about January 1, 1898; that on February 3d of that year Samuel Nixon and Samuel M. Nixon entered into a written agreement as follows:

"It is hereby agreed to and between Samuel Nixon, of Butte, Mont., party of the first part, and Samuel M. Nixon, of the same place, party of the second part: Witnesseth, that whereas the party of the first part is owner and proprietor of that certain general merchandise business known as the Silver City Mercantile Company, situated at 457 East Park street; witnesseth, that as the party of the first part is desirous of continuing the above business, and does by this contract hire and employ the party of the second part, for the term of three years from the third day of January, eighteen hundred and ninety-eight, as general manager, to conduct the business of the said Samuel Nixon both in the state of Montana and elsewhere; witnesseth, that the party of the second part is to receive as salary two hundred dollars ($200.00) per month, commencing January 3rd, 1898. Further, the said party of the second part is to receive one-half or 50% of the gross profits of the general merchandise business as shown by the books of the said Silver City Merc. Co. (Samuel Nixon). It is further agreed that the party of the second part is to have the exclusive right to purchase all goods, and have exclusive control of the business at 457 East Park street, or at any other place that said business may be moved to. It is further agreed that this contract is irrevocable, but may be abrogated by the party of the second part at any time that he can better himself financially with any other house or firm."

Lemuel W. Nixon and Fannie J. Lott were not parties to this agreement. Neither of them had anything whatever to do with the organization of the firm. It is not claimed that they did. When, then, did they ever become co-partners, if at all? Samuel Nixon, the father, had been engaged in mercantile business for several years. Samuel M. Nixon had been engaged as a mercantile broker, buying and selling goods, and understood the business. He was the manager of the store, and was entitled, by the terms of the agreement, to one-half of the profits over and above his salary of $200 per month. It may be presumed from the testimony that L. W. Nixon had at that time but little, if any, knowledge of mercantile business. About May 1, 1898, he was employed as a clerk by the Silver City Mercantile Company. He worked one month without any salary. The next month he received $40, then for two months he got $75 per month, then his salary was raised to $85 per month, and during the months of April, May, and June he received $100 per month. These facts are undisputed. In March, 1899, one S. C. Ashby was appointed a trustee in bankruptcy of the Clarke & Talbott stock of goods in South Butte. Sealed proposals for the sale thereof were requested, and on the 12th day of April, 1899, he sold the stock of goods, through S. M. Nixon, to the Silver City Mercantile Company, for $4,404.50, which was paid by check signed by said mercantile company on Marcus Daly & Co.'s bank. The mercantile company immediately took possession of these goods, and conducted the store in South Butte up to July 1, 1899, when it sold the remaining stock of goods in the store to L. W. Nixon for $1,825.24, and he took possession thereof July 11th. S. M. Nixon testified that the mercantile company kept

a record of the Clarke & Talbott stock, what was paid for it, what was received from it, and what goods were put into it from the company's store; that on July 1st they only lacked $825.24 of having their money back, and sold to L. W. Nixon "the tail end of it" for $1,825.24, and thereby realized $1,000 profits on that stock of goods. He further testified that:

"After my brother bought out that stock the Silver City Mercantile Company did business with him the same as we would with any other firm or men. Our books disclosed the goods we sold to him, and the money he paid, and they correctly set forth the transactions as they occurred between us."

After L. W. Nixon took possession of the store he opened up a full set of books, and kept a bank account with Clark Bros. During the time he run the store the books show that he paid the Silver City Mercantile Company $12,160 for goods bought from said company, and paid over $2,500 for goods bought from other parties. The goods he bought were paid for in checks, except the sum of $724.15, which he paid in cash taken out of the register. It is contended by appellees that there is a discrepancy of about $4,000 between the amount of goods sold by the Silver City Mercantile Company to L. W. Nixon, as shown by his day book, and the amount shown by the ledger of the company. This appellants deny, and claim that the books of both concerns are in entire harmony; that the confusion arises because of the fact that the items were not always entered in the same order. Be that as it may; appellees admit that separate accounts were kept between the two stores. Counsel say:

"We do not doubt that books were kept or prepared for the East Park street store and the South Butte store in such a manner as to give some appearance of separate and distinct interests. They had ample time and opportunity to prepare such records. * * * It was an easy matter to go through the form of keeping pretended separate accounts of the business."

Some reliance seems to be made upon the fact that L. W. Nixon, as shown by his books, drew out from his business various sums of money, aggregating over $4,000, during one month. Appellants claim that this matter is satisfactorily explained. We need not stop to determine this point. As long as L. W. Nixon paid for the goods he bought, it was nobody's business what amount of money he drew out from the business he was conducting in his own name. The fact of his drawing out large sums of money certainly does not tend to show that he must have been a partner in the Silver City Mercantile Company. There is no testimony, and no pretense on the part of the appellees, that he divided any of this money, as a dividend or otherwise, with the mercantile company.

There is another line of testimony relied upon by appellees, which, they earnestly argue, tends to connect L. W. Nixon as a partner in the mercantile company. This consists of the declarations made by S. M. Nixon and others that the mercantile company had three stores. These declarations were not made in the presence of L. W. Nixon or Fannie J. Lott, and were admitted upon the promise and assurance of appellees that they would connect him and her as partners. No such testimony is found in the record. The declarations of S. M. Nixon were admissible to bind him as a partner, and, in our opinion,

were sufficient for that purpose, but were not binding upon L. W. Nixon or Mrs. Lott, and cannot be considered against them. Before they could be bound by such declarations, there must be some proof tending to show a co-partnership between the parties, for without such evidence the declarations or admissions of one partner cannot be considered as evidence against other parties.

Another line of testimony is in regard to certain inventories that were taken of the goods at the time of the seizure by the marshal of the Centerville and East Park street stores, showing a much larger quantity of goods in each than had been accounted for by goods bought. The reliability of these inventories is seriously questioned by appellants; but, for the purposes of this case, if admitted to be true, it does not tend to show that there existed between L. W. Nixon and Fannie J. Lott any co-partnership with the other Nixons or the mercantile company. L. W. Nixon is styled by appellees "as the past master in the art of romancing." He testified, among other things, that he amassed a fortune of over $20,000 in Guatemala by smuggling and stealing, and carried this amount on his person for years in $1,000 bills, etc. He claims to have loaned Mrs. Fannie J. Lott over $7,000 to enable her to buy the Centerville store. It is claimed that L. W. Nixon had no money, and that he could not have loaned that amount and other amounts to Mrs. Lott. It is said he is unworthy of belief. In the next breath it is claimed that he is an embezzler. If so, he was liable to have had enough money to make the loan. But, if he had no money, from whom did Mrs. Lott get the money? Her books and other evidence show that she deposited in the Silver Bow National Bank the sum of $7,667.99 during the months of October, November, and December, and that she paid by checks on this bank to the Silver City Mercantile Company the sum of $4,969. She also bought goods from other parties. How much, is not shown. The record shows that the Lott family were in California prior to October, 1899, and that they did not come to Butte, Mont., until the latter part of that month. Mrs. Lott could not become a partner in the mercantile company without the consent of all the partners. There is no testimony from which any inference can be drawn that either Samuel Nixon or Samuel M. Nixon ever gave his consent.

It would serve no useful purpose to further mention the details of the evidence. It is enough to say that in its entirety it follows closely the line of the general averments in the amended petition,— that the defendants had entered into a conspiracy and colluded together for the purpose of hindering, delaying, and defrauding the creditors of the Silver City Mercantile Company. We decline to express any opinion upon its sufficiency or insufficiency to establish a conspiracy for that purpose, because that is a question of fact for a jury to determine. Appellants both testify that their transactions were bona fide, and claim the goods in their respective stores to be their own property. It may or may not be sufficient to justify the petitioning creditors in having the trustee in bankruptcy institute proceedings under the bankruptcy act to recover the goods on the ground that the same were obtained by fraud and collusion, for the sole pur-

pose of hindering, delaying, or defrauding them as creditors of the Silver City Mercantile Company; and, if such proceedings should be instituted, the appellants would have the right to demand a jury. Our examination of the testimony leads us to the conclusion that it is wholly insufficient to establish the fact that any partnership relations existed between appellants and Samuel Nixon and S. M. Nixon or the Silver City Mercantile Company. Appellees have failed to point out any specific fact or facts in the testimony which constitute a co-partnership, either singly or collectively, and we have failed to find any. The sum and substance of their entire contention is that, taking all the testimony in the record of appellants' financial condition, their relations by blood and marriage, their methods of doing business, the improbabilities of their testimony, the utter unworthiness of L. W. Nixon as a man or a witness, their transactions cannot be accounted for upon any other theory than that they were co-partners. The inference to be legally drawn from all the testimony points with a strong magnet in another direction. Many of the suspicious circumstances relied upon by appellees tend strongly to show that, whatever their relations in business may have been with the mercantile company, they were not co-partners. Mrs. Lott was without means. She had no property or money, and but little, if any, credit or influence in the community. The character and reputation of L. W. Nixon, as portrayed in the testimony and pictured in glowing colors by counsel for appellees, certainly would not make him a very desirable partner. It is safe to say that none of the creditors ever sold any goods to the mercantile company upon the faith, belief, or credit that they, or either of them, were co-partners in that company. The creditors may have been induced to sell goods to the mercantile company upon the representations of Samuel M. Nixon that the company had three stores, was doing a prosperous business, and was out of debt. But we have already shown that there are no links in the chain of circumstantial evidence so welded together as to make these declarations binding upon L. W. Nixon or Mrs. Lott. The record is full of facts and circumstances which clearly show fraud, misrepresentations, and deceit by the mercantile company. There is no room for doubt that the creditors of that firm (petitioners herein) have been defrauded and swindled out of their just dues and demands. The stock of goods which that company had in its own store was sold to L. E. Cook for $10,000. Samuel Nixon left the state, and this money (if any was ever paid) and other money belonging to the company, which should have been used to pay the debts of that company, disappeared at the time of Samuel Nixon's departure. Whatever amount Mrs. Lott is shown to be indebted to the mercantile company can be reached as an asset, and subjected to the payment of petitioners' debts, in a regular manner. But the mere fact that certain goods were found in the stores run and claimed by L. W. Nixon and Mrs. Lott, which petitioners had at different times sold to the mercantile company, cannot be said, in the light of all the testimony, to establish the fact of an existing co-partnership between the parties.

We are of opinion that the court erred in holding that "L. W. Nixon and Fannie J. Lott were co-partners doing business as the Silver City Mercantile Company, and adjudging them to be bankrupts." The decree of the district court as to L. W. Nixon and Fannie J. Lott is reversed, with costs.