### In re CLARK.

#### (District Court, D. Washington, E. D. November 27, 1901.)

1. BANKRUPTCY—EVIDENCE TO ESTABLISH PARTNERSHIP.

   To charge a person as a silent partner in the business of a bankrupt, so as to debar him of the rights of a creditor of the estate, where there has been no holding out as such an actual and definite agreement must be proved, binding on all the parties thereto.

2. SAME—EVIDENCE CONSIDERED.

   Evidence considered, and *held* insufficient to sustain a finding that one claiming to be a creditor of the estate of a bankrupt was a silent partner in his business.

On exceptions to decision of referee, rejecting claim of E. W. H. Lake as a creditor, and finding him to be a partner of the bankrupt. Decision reversed, and claim allowed.

Samuel R. Stern, for contesting creditors.

Graves & Graves, for Lake.

HANFORD, District Judge. The referee to whom this case was referred has certified to the court for its consideration a disputed question as to the validity of a claim against the bankrupt's estate, filed by E. W. H. Lake, a merchant of Atchison, Kan. For a clear statement of the question, and the circumstances under which it arose, I cannot do better than quote from the certificate of the referee as follows:

"E. Clark filed his voluntary petition and schedules in bankruptcy on January 28, 1901, showing assets of $20,197.56 and liabilities of $27,005.78. The petition, in the absence of the judge, Hon. C. H. Hanford, from the division of the district, was referred to Frederick W. Dewart, one of the referees in bankruptcy; and on the same day Mr. Clark was adjudicated a bankrupt. Among the liabilities scheduled was that to E. W. H. Lake, of Atchison, Kansas, for $7,244.10 in money and $4,219.86 in merchandise. The bankrupt was examined by the trustee and the creditors on February 14th, 19th, 23d, and 26th, and March 12th, and he testified that he came to Spokane in July, 1899, and with one George J. Reiter formed the partnership of Clark & Reiter, which continued until June, 1900, when Mr. Reiter retired, and the business had since been carried on by Mr. Clark alone. The bankrupt was examined at length regarding the business of the concern, and the examination was then closed. On March 12th a dividend of 40 per cent. was declared on the claims approved and allowed. Mr. Lake having returned $750.00 in money and goods, which he had received from the bankrupt within the preceding four months, his claim was allowed for $1,900.00, and he received his dividend thereon. The remainder of his claim was suspended awaiting further investigation and proof. On April 9th Mr. Reiter, the former partner, was summoned as a witness and examined. He testified that E. W. H. Lake was a partner in the business from its inception.

Mr. Reiter produced letters from Mr. Clark, the bankrupt, written during the year 1899, which corroborated Reiter's statement on this point. The bankrupt was then ordered for examination, and on April 24th and 25th E. W. H. Lake, having voluntarily appeared, was examined at length, and on April 26th and 27th Mr. Clark was examined. Depositions were taken in San Francisco, Portland, and Atchison, and the various examinations of the bankrupt and other witnesses at Spokane were taken by stenographer in full, and are all included in the record, with the many exhibits. The sole question in this matter is one of fact: Was E. W. H. Lake a partner? * * * I find that E. W. H. Lake was a partner in the firm of Clark & Reiter, and after the dissolution of that firm a partner with E. Clark. And on that finding the following order was made: 'At Spokane, in said district, on the 21st day of August, A. D. 1901. Upon the evidence submitted to the court upon the claim of E. W. H. Lake, heretofore allowed, against said estate, in the sum of $1,900.00, and upon hearing counsel thereon, it is ordered that said claim be disallowed, and expunged from the list of claims upon the trustee's record in said case. It is further ordered that the said E. W. H. Lake shall repay to the trustee herein the sum of $760.00, dividend received by him on said claim. It is further ordered that the further claim of said E. W. H. Lake against said estate for the sum of $11,174.41 be disallowed, and the said E. W. H. Lake shall pay the cost of this proceeding, taxed at $289.77.' Counsel for Lake having filed his petition asking that the question be certified to the United States district court, the said question is certified to the judge for his opinion thereon.

"Dated at Spokane, Washington, this 3d day of October, 1901.
                         "Frederick W. Dewart, Referee in Bankruptcy."

There is no basis for a presumption that Mr. Lake was a silent partner of the late firm of Clark & Reiter, nor that his claim as the principal creditor of the bankrupt is fraudulent. Therefore, to justify a decision adverse to him, it must be proved by a fair preponderance of the evidence that he was such partner, and there must be convincing proof of an attempt on his part to commit a fraud upon other creditors and deceive the court.

As to the principal question,—whether Lake was a partner,—the referee very truly says that:

"There are three persons who should be able to answer this question,— Mr. Clark, Mr. Reiter, and Mr. Lake himself. We should consider the statements of these parties, and the numerous acts and facts which tend to corroborate or refute their testimony."

With respect to the testimony of Clark and Lake, there is no room for any misunderstanding. They both deny positively and circumstantially that there was ever any agreement to form a partnership with Mr. Lake as a partner, and, without proof that there was an actual agreement to which the minds of all three assented, it is not possible to fix upon Mr. Lake the legal responsibility, or entitle him to the rights of a silent partner. The rule which fastens upon one the responsibility of a partner because he has held himself out to persons dealing with the firm, or knowingly permitted others to make representations that he was a partner, has no application in a case where the question at issue is whether the person charged was in fact a silent partner. The mere statement of the question excludes every supposition that the parties may be bound as partners by estoppel, and, besides, in this case all the testimony and circumstances tend in one direction only, and that is to prove that Mr. Lake was never an active member of the firm,

that he never by word or act represented himself to be a member of the firm, that neither Clark nor Reiter ever represented to the public or to their creditors or customers that Lake was their partner. In his opinion the referee asserts that "Mr. Reiter testified positively that Mr. Lake was a secret partner in the concern from the beginning." From reading the testimony of Mr. Reiter, I am convinced that he is a candid witness, and an honest man. Positive testimony coming from a truthful witness having his opportunity to know the facts, corroborated by circumstances and the bad book-keeping exhibited, would be very hard to overcome; but I feel constrained to disagree with the referee as to the effect of Mr. Reiter's testimony. If there was an agreement between Clark and Reiter and Lake to enter into copartnership, there must have been some particular time and place when and where all three, or the last of the three, assented to the agreement; and the agreement to which the assent of the three minds was given must have contained terms and conditions to which all were bound. Mr. Reiter, however, does not pretend to fix any time or place when or where the agreement was assented to, nor does he state the terms or conditions which bound the copartners; on the contrary, he testified and repeated and reiterated many times that the subject of a partnership was never mentioned when he was present and when Mr. Lake was present. It appears from his evidence that after some preliminary correspondence between himself and Mr. Clark, while he was employed at Anaconda, Mont., and Clark was employed in Pittsburg, Kan., he received a letter from Clark containing a statement that Lake desired to take an interest with them in a business to be started in some place to be chosen in the West, and that it would be much to their advantage to have Lake interested; that with his assistance they would have no difficulty in obtaining credit; and proposing that Reiter should put into the concern $500, and that Lake and Clark would together contribute $1,000 to the capital, and the three should be equal partners. At the time of receiving this letter Mr. Reiter was not acquainted with Lake, but he acted in the belief that the proposition contained in Clark's letter was bona fide, and authorized by Lake. He proceeded in search of a location, and, having a preference for Spokane, went to Pittsburg to have a conference with Clark, and the two together visited Mr. Lake at his home, where the subject of commencing business at Spokane was talked over. Mr. Lake made inquiry with respect to the city, and expressed his views with regard to the manner of conducting a retail mercantile business, and in their conference Mr. Reiter seems to have taken it for granted that the proposition in the letter which he received from Clark was known to and understood by Lake, and he appears to have assumed that a partnership was already formed, although, as I have already stated, the testimony shows that the subject of a partnership was not mentioned at that time by either one of the three, nor at any time afterwards when Mr. Lake was present. After the business had been commenced, Mr. Lake visited Spokane, and remained about one week, during which time he slept in the same room with Mr.

Reiter, so that there was no lack of an opportunity for them to become well acquainted; and the circumstances were such as to encourage the development of confidential relations, and a clear understanding of the interest which each had in the business. At that time Mr. Reiter had invested in the business $900, Mr. Clark had contributed $1,400, and Mr. Lake had advanced $2,400 in cash, besides furnishing a large part of the stock of merchandise which the firm of Clark & Reiter had commenced business with; so that Mr. Reiter must have known that, instead of acting upon the proposition contained in Clark's letter to form a copartnership with a capital of $1,500, the actual contributions of himself and Clark exceeded the entire capital originally proposed, and that it was not contributed in equal amounts by the two, and that Mr. Lake's contribution amounted to nearly three times as much as the aggregate of the amount put in by the other two; and yet, according to Mr. Reiter's testimony, there was never a suggestion made to Mr. Lake nor by Mr. Lake that there should be an adjustment of this inequality. Silence, under the conditions indicated, is most significant; and, instead of finding in Mr. Reiter's evidence any positive statement that Mr. Lake was a partner, I regard his testimony as strong corroboration of the testimony given by the other two, and the three are not contradicted in any important matter by any other witness. The whole force of Mr. Reiter's testimony bearing upon the issue may be fairly measured by the two most important statements therein, which are substantially as follows:

"I never talked with Mr. Lake concerning partnership. * * * Well, I will make another statement: When I was about to get on the train to leave Atchison, Kansas, to come out here with Mr. Clark, Mr. Lake says to me, 'If we decide to not go to Spokane,—not to open up the business there,—you send me an account of your expenses that you have been to in looking up a location, and I will remit you a draft for the amount.'"

This proves to a certainty that up to that time Mr. Lake had not entered into a partnership with the other two, but an inference has been drawn from Mr. Lake's use of the pronoun "we" in making his offer that he understood himself to be interested in the business venture on which the others were then starting, and that by the contributions of money and merchandise which he subsequently made to aid in starting the business he joined himself to the enterprise and became a partner. In the light of all the evidence, however, it is not difficult to find a reasonable explanation of the offer and of the words in which it was made entirely consistent with Mr. Lake's position as a creditor, and sufficient to rebut the inference. It appears that, after writing the letter to Mr. Reiter above mentioned, and before the meeting of the three at Atchison, Mr. Clark did propose a partnership to Mr. Lake, which the latter very promptly declined to consider; but at the same time he offered to assist Clark, who was then, and had been for several years, his intimate friend, by extending him credit to the amount of $4,000 or $5,000. Lake was then building up a wholesale merchandising business. He had strong faith in Clark as a capable manager, and had good reason to believe that liberality on his

part in assisting his friend would insure him a new customer, and enable him to extend the trade of his own house into new territory. It was good business policy for him to encourage Reiter by voluntarily offering to pay his traveling expenses if he should for any reason become unwilling to furnish the backing which he had promised to Clark. It appears that Clark did not inform Reiter candidly that Lake had declined to become a partner, but in a letter written several days before the first money had been obtained from Lake he did say to Reiter that:

"The firm name will be Clark & Reiter. Our capital will be $8,000.00. Lake is carrying me for the balance of the stock. I am pledging him my credit. * * * I think you will be satisfied with the deal when I talk it over with you."

This was at least a plain notice to Mr. Reiter that the plan of a partnership first proposed had not been carried into effect, and that Lake had become a creditor of Clark. It is true that there are circumstances which harmonize with the theory of the referee's decision; but these circumstances are not conclusive, nor sufficient to overcome the positive testimony of Lake and Clark, corroborated, as I have indicated, by Reiter. The fact which I consider most prejudicial to Mr. Lake's case is his failure to respond to an inquiry by a wholesale establishment with which he was dealing as to whether he was a silent partner in the business with Mr. Clark. The same circumstance, however, would be equally strong against Mr. Lake if he were now claiming the rights of a partner and such claim was being contested.

The evidence is insufficient to justify a finding that Mr. Lake was a partner with Clark at or previous to the time of his becoming bankrupt, and, on the other hand, it is sufficient to prove clearly that the claim which Mr. Lake makes as a creditor in its entirety, and every item, is valid and just. The court directs that an order be entered reversing the decision of the referee, and allowing the claim. The costs of the proceedings will be paid out of the funds in the hands of the trustee.