### In re C. F. BECKWITH & CO.

(District Court, M. D. Pennsylvania. June 7, 1904.)

#### No. 423.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—PARTNERSHIP.

 To sustain proceedings in involuntary bankruptcy against a person as a partner in a firm, a partnership in fact must be shown, and not a mere holding out by which he may have become liable to creditors.

2. PARTNERSHIP—EVIDENCE TO ESTABLISH.

 The existence of a partnership may be deduced from facts and circumstances, and where two or more persons are engaged in a joint business enterprise, to which they contribute either capital, skill, or labor upon an

understanding, tacit or otherwise, that they will share in common the profits accruing therefrom, they are partners in fact and in law, both between themselves and as to creditors, although there is no express agreement to that effect.

3. SAME.

Evidence considered, and *held* to show such relation on the part of a defendant in proceedings in involuntary bankruptcy to the business conducted in the name of his codefendant during a series of years as to establish a partnership between them in such business.

In Bankruptcy. Involuntary proceedings. Hearing on petition, answer, and proofs.

Frank E. Donnelly and A. V. Bower, for petitioners.

W. J. Hand and C. J. Galston, opposed.

ARCHBALD, District Judge. These are involuntary proceedings instituted against the firm of C. F. Beckwith & Co., composed, as it is alleged, of Charles F. Beckwith, of Scranton, and Frank Cazenove Jones, of New York. Beckwith makes no contest, but Jones answers, denying insolvency and the commission of any act of bankruptcy, and particularly denying that he was a partner as charged. A jury trial was demanded as to all these issues, but it has been withdrawn as to the question of partnership, which is submitted to the court for disposition on the proofs.

To maintain the proceedings as to Jones a partnership in fact must be shown, and not a mere holding out, by which he may have become liable to creditors. Collier on Bankruptcy, 61; In re Clark (D. C.) 111 Fed. 893; Lott v. Young, 6 Am. Bankr. R. 436, 109 Fed. 798, 48 C. C. A. 654. Otherwise the proceedings might be good as to some creditors, with respect to whom this was true, and not as to others, as to whom it was not. And we should also have instances where there was no joint estate to administer, nor any assets other than the personal liability of the individuals who had made themselves answerable, a condition which plainly is not contemplated by the bankrupt act. In re Kenney, 3 Am. Bankr. R. 353, 97 Fed. 554. But the existence of a partnership may be deduced from facts and circumstances, and does not have to be established by proof of an express agreement, either oral or written. 22 Am. & Eng. Enc. Law (2d Ed.) pp. 39, 40, 65. Where two or more parties are engaged in a joint business enterprise, to which they contribute either capital, skill, or labor, upon an understanding, tacit or otherwise, that they will share in common the profits accruing therefrom, they are partners in fact and in law, both between themselves and as to creditors. 22 Am. & Eng. Enc. Law (2d Ed.) pp. 13, 27; George on Partnership, 30; Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. Ed. 484. It is upon this basis, if at all, that the claim of partnership here must be made out.

The relation between the two parties concerned as respondents in these proceedings was in the beginning the outcome of social friendliness. Mr. Jones had large manufacturing interests, and young Beckwith, on giving up college in 1896, through family acquaintance and influence, secured a place in one of his establishments, to familiarize

himself with the business, and later on was given an agency at Scranton to sell on commission rubber goods and oils. The oils were afterwards cut off on objection from the general agents at Philadelphia, and Beckwith confined himself to buying and selling mine machinery and supplies, including rubber products as they happened to come in. It was not long before he began to need money, and Jones undertook to have notes discounted for him in New York. At first perhaps five hundred to a thousand dollars was raised in this way, but it was gradually increased as Beckwith branched out, until it amounted to several thousand. In the fall of 1898, after consultation with Jones, a party by the name of Derry was taken in by Beckwith, and the firm of C. F. Beckwith & Co., ostensibly composed of Beckwith and Derry, was formed. Derry contributed nothing but his services and ability as salesman, for which he was paid a commission in addition to his salary, the necessary capital to carry on the business being obtained, as before, by notes with Mr. Jones' indorsements, discounted at bank. The advance made in this way while Derry was in the firm reached the aggregate of $20,000. The year following another party, named Carter, who was expected to contribute both capital and business, was talked of being taken into the concern, and Jones was consulted with regard to it, giving it his approval, and stating that when the arrangements were complete he would have his attorney, Mr. Warner, draw up the partnership papers. The matter fell through, and this was not necessary, but the suggestion contained in the latter observation is significant.

In May, 1901, differences arose between Beckwith and Derry, ending in Derry's withdrawal. Immediately following this Jones was consulted by Beckwith as to whether he should continue to use the firm name of C. F. Beckwith & Co., and Jones advised him to do so, saying that he was still with him, as he had been heretofore. About this time also Beckwith undertook to put through a large transaction in steel rails which required extended capital and credit, and inquiries began to be made in commercial circles as to the standing of the firm. In response to this a call was made on Mr. Jones at his office in New York by J. S. Merrill, a representative of Dun & Co.'s Mercantile Agency, who stated the occasion of his coming, and asked for information as to his connection, if any, with C. F. Beckwith & Co. To this Mr. Jones replied that he was and always had been a special partner with Beckwith; that he had known him from a boy, and helped him since he left college, furnishing him capital, and practically financing his business. He also stated that C. F. Beckwith & Co. had a capital of from $30,000 to $50,000, and was able to carry through any deal that they might undertake, and was made up of Beckwith, and himself as a special partner, the intention being to take in also two other practical men, which would not, however, affect his own interest. Mr. Jones denies any such statement, but Merrill was a man of too large experience in such work to either misrepresent or be mistaken, and he is corroborated by the report which he gave of the interview to the mercantile agency which he represented. Neither was this the only time that Jones admitted to being a part-

ner. When Beckwith was negotiating for the purchase from M. J. Dolphin of the Riverside coal washery, he wanted to make part payment in notes, to which Dolphin assented, provided Jones, who had been introduced by Beckwith as his partner, would indorse them. But Jones said that it would make no difference, as he was interested with Beckwith, and would be liable. He also declared that he was a partner to Col. Sickles of New York, and to Mr. Coffin, of the Phœnix National Bank, to whom Mr. Beckwith had gone for the purpose of getting him to negotiate some Western paper. It further appears that Mr. Jones was furnished with a statement from the books every 30 or 60 days showing the condition of the business, and was constantly consulted and kept advised by Beckwith, by letters and personal interviews, as to just what was going on. In the rail deal referred to, he guarantied accounts of the firm to the extent of $160,000; and, taking the aggregate of his indorsements during the five or six years that he backed the concern, he loaned his credit, all told, to the extent of about $600,000.

The intimate connection which is thus shown, entirely aside from any statements or representations, is hardly consistent with anything less than a direct financial interest in the business. With all Mr. Jones' friendliness, it is, to say the least, most unusual that he should put up the whole capital required to keep the concern going, in increasingly large amounts, and intervene, as he did, in the conduct of its affairs, not only by advice, but at times by active personal participation, on a purely disinterested basis. And when, in addition to the natural inference to be drawn from these circumstances, we have his word for it—not once, but on several occasions, and to separate parties—that he was a partner, he cannot well complain, if we conclude from all the evidence, that in so stating he spoke the undoubted truth. It is urged, however, that he said no more to Merrill than that he was a special partner, implying a limited liability to the extent of the capital put in. But he did not confine himself to this statement, declaring, as he did, that the firm was made up of Beckwith and himself. Neither is there any suggestion of a compliance with the law by which such special and limited liability is secured. Further than this, there was no such qualification in his declarations to Dolphin, Col. Sickles, or Mr. Coffin, nor in the introduction of him by Beckwith as a partner, which he permitted to be made to others. It is said that in the letters, back and forth, which have been put in evidence, Beckwith always speaks of the business as his own, laying stress on the kindness of Mr. Jones in befriending him, and that those from Mr. Jones are of similar tenor. But this is readily explained, if not natural, and by no means overcomes the other circumstances which have been alluded to. Further than this, if letters are to speak, that from Mr. Jones of February 11, 1899, is significant. Referring to some difficulty which had been expressed in getting orders filled by Voorhees & Co., and the prices which they had charged, he writes: "I will have a full talk with Mr. Voorhees, and if he does not give you these samples, and does not hereafter promptly reply to your enquiries, we will have to go somewhere else." And again,

on the matter of prices: "It is outrageous for them to act in this way, and unless they can pull themselves together, and do business in a proper manner, we will have to leave them, and we will give them this one more chance." The whole of this letter, which is too long to repeat, can be consulted with profit on the subject of the relation between these parties.

But it is urged that the moneys advanced by Jones were always on obligations of the firm, which he merely indorsed by way of accommodation. It is true that they took this form, and were carried on the books as an indebtedness, the firm paying the discount. But they were to be paid, according to the arrangement, out of the business, and with that in view this was the only correct or convenient way to treat them. It is also to be observed that Beckwith, as well as Derry when he was in the firm, worked on a salary drawn from the business, so that it was not as though he contributed his time and services as against Jones' money. And being fully compensated in this way for what he did, Jones, as a matter of equality, was entitled, particularly if it was so agreed, to have the working capital which he secured treated and taken care of as a loan. Except as to risk, this may have given him somewhat the best of the bargain, but it certainly does not dispel the idea of a partnership.

But it is further said that there was no provision for a sharing of profits, which is essential to the partnership relation. In re Gibbs' Estate, 157 Pa. 59, 27 Atl. 383, 22 L. R. A. 276. That there never was a division of profits in fact is true, because of the condition imposed by Jones that the obligations of the firm should be first taken care of. But it cannot be said that there was no provision for it. On the contrary, Mr. Beckwith testifies that he brought the matter up to Mr. Jones, and was put off with the suggestion that it would be time enough to talk of that when the notes had been paid which were outstanding. This did not put aside the possibility; it simply postponed the day. The idea was not rejected as inapplicable to the existing relation, but was merely deferred until certain contingencies had been overcome. Can it be successfully argued that if there had been profits to divide Mr. Jones would not have been entitled to set up and rely upon this remark of Beckwith's as evidence that by mutual understanding he was to have a share? If it be said that the proportion which each was to have was not defined, it may be answered that an equal division, in the absence of a distinct agreement, would be implied. At all events, it is to be observed that the right of Mr. Jones to share in the profits was brought forward and apparently assented to. It was thus recognized that the business was his as well as Beckwith's, which is that with which we are particularly concerned. It is difficult to reproduce the transactions of years, and what has thus been alluded to in outline has to be filled in by natural inference and deduction; but enough is shown, as it seems to me, to establish the essential elements of a partnership, and to warrant the conclusion that it existed between these parties as claimed. The case may not be free from doubt, but the weight of the evidence certainly is that way.

On the issue raised by the petition and answer it is held that a partnership existed between the respondents C. F. Beckwith and Frank Cazenove Jones, trading as C. F. Beckwith & Co., as charged in the petition, and the proceedings are to that extent sustained.